## EAGLE AND PHENIX MILLS *v.* MUSCOGEE MANUFAC-
## TURING COMPANY. ,

1. Where a demurrer to an equitable petition was overruled, and on exception to this court the judgment was reversed, when the remittitur was returned to the trial court and before it was made the judgment of that court an amendment could be offered to the petition, provided it was a proper amendment, and there was enough in the pleadings to amend by.
2. A petition showing a plaintiff and a defendant, and setting out sufficient to indicate and specify some particular fact or transaction as a cause of action, is enough to amend by. The jurisdiction of a court may be shown, and the details and circumstances of the particular transaction may be amplified and varied by amendment. If the declaration omitted to allege facts essential to raise the duty or obligation involved in the cause of action which was evidently originally intended to be declared upon, the omitted facts may be supplied by amendment.
3. The amendment which was offered in this case was not subject to objection on the ground that it sought to add a new and distinct cause of action to that originally involved, or that there was not enough in the original petition to amend by.

Argued June 29,—Decided December 21, 1907.

Equitable petition. Before Judge Littlejohn. Muscogee superior court. December 28, 1906.

*Goetchius & Chappell, Charlton E. Battle,* and *Spencer R. Atkinson,* for plaintiff.

*Slade & Swift, J. H. Martin,* and *S. B. Hatcher,* for defendant.

LUMPKIN, J. This case was formerly before us on exception to the overruling of a demurrer to the plaintiff's equitable petition. The judgment was reversed. 126 *Ga.* 210 (54 S. E. 1028, 7 L. R. A. (N. S.) 1139). The petition is there briefly reported. On the return of the case to the superior court, and on the presentation of the remittitur from this court, the plaintiff offered an amendment to its petition, the principal allegations of which were substantially that the plaintiff and the defendant each held by a chain of

conveyances under Howard; that the plaintiff's chain conveyed to it the eighteen water lots below the one held by the defendant, with the appurtenances thereof; that the water right asserted by the plaintiff was such an appurtenance and passed to it; and also that the defendant was estopped from denying such right, by reason of certain facts alleged. Objection was made to the allowance of the amendment, on two grounds; first, that there was nothing in the original petition to amend by; and second, that the amendment added a new cause of action. The objection was sustained, and the petition dismissed. The plaintiff excepted.

We shall not enter into a general discussion of the petition and the amendment, but shall confine ourselves to the two grounds of objection to the latter which were urged and sustained.

The object of amending is ordinarily to cure some mistake or defect, or to perfect that which is not already complete. If the petition is already perfect, it requires no further perfecting. If there is no defect or mistake, there is nothing to cure. If the rule were established, that, to contain enough to amend by, there must be enough to withstand a demurrer, the utility of the right to amend would be largely abrogated. The Civil Code (§5097) declares that parties may amend their pleadings "in all respects, whether in matter of form or of substance, provided there is enough in the pleadings to amend by;" but the defendant after the first term can not set up new matter by way of amendment, except as elsewhere in the code provided. Section 5098 reads as follows: "A petition showing a plaintiff, and a defendant, and setting out sufficient to indicate and specify some particular fact or transaction as a cause of action, is enough to amend by. The jurisdiction of the court may be shown, and the details and circumstances of the particular transaction may be amplified and varied by amendment. If the declaration omit to allege facts essential to raise the duty or obligation involved in the cause of action which was evidently originally intended to be declared upon, the omitted fact may be supplied by amendment." These two sections point out the right of amendment, and what will constitute enough to amend by, and throw light on the question of the extent to which the right may be exercised without being obnoxious to the rule against adding a new and distinct cause of action, stated in the next section (5099).

The original petition may be thus briefly summarized: The

defendant owes a duty to the plaintiff not to use more than a certain described proportion of the water power, or the water generating such power, at the place named. It is violating that duty. The plaintiff has been injured thereby, and will be irreparably damaged unless injunction shall be granted. It sought injunction for the future and damages for the past injury. It is a somewhat technical and restricted construction to say that the original petition is confined solely to complaining of excessive use of the power; that the amendment deals with unlawful use of the water; and that these are two distinct things. What both parties want with the water is to generate power, and the water plus the head creates the water-power. To treat the power as so totally distinct from the water generating it that contentions about the two constitute distinct and separate causes of action, so that allegations as to the one can not be engrafted by amendment on those as to the other, is too scholastic a refinement for ordinary proceedings in a court of equity. One might almost as well declare that a suit about an orange could not be amended by any allegation about its peel; or that a contention in regard to steam power was not amendable by adding any allegation touching the steam itself.

Counsel for the defendant in error dealt with the original case as if it were merely a suit on a breach of a covenant. But we can not concur in this view. It was primarily an effort to enjoin the alleged wrongful use of more water-power than the defendant was entitled to draw from the stream, according to the plaintiff's contention. Incidentally damages were sought for the alleged injury in the past. One or two references to the original petition will suffice to show that the water, as well as the power generated by it, was in the view of the pleader. At one point in the petition it was alleged that "under none of the different arrangements for confining the water of the river was it [the defendant] to have or use more than its proportionate part of the water as designated and fixed in said original conveyance." At another it was alleged that the defendant claimed the right to take from the canal or basin "as much of the water of the river as it desires," etc. Again, that, during a dry season in the year 1902, the defendant "continuously used and took from the canal or basin water largely beyond the amount to which it was entitled and to the extent of from one fourth to one half of the entire water-power of the river as de-

veloped by the existing dam," causing injury to the plaintiff. It was also alleged that in 1904, during a drought, if the mills of the plaintiff and defendant ceased operating at night, the water would rise in the pond, and by carefully husbanding it the mills could be operated the next day, "provided the defendant at lot number one only drew from the canal or basin its fair proportionate part of the water, to wit, less than one nineteenth;" but that it drew from the canal and basin such an amount of water as aggregated one half of the water-power developed by the dam of the plaintiff. Among the prayers was one that the defendant be enjoined "from taking and using at any time and at any stage of water in the river, for uses on lot number 1, any amount of water which would generate a power greater than the one nineteenth of the whole power which may be generated at various stages of the river by the existing dam." Other citations might be made, but we think these will serve to show that the design of the pleader comprehended the water producing the power as well as the power produced.

But it was said that the alleged duty on the part of the defendant not to use more than a certain quantity of water or water-power depended, in the original petition, solely upon certain covenants which this court held were not shown to run with the land, and that the amendment sought to add a new cause of action by showing additional reasons why this duty existed. Even in the original petition there are allegations that the plaintiff held under conveyances coming down from Howard, and that its immediate predecessor in title had built a new stone dam instead of the old wooden one, at a slightly different place. The statements were insufficient to make out a case. But, as already stated, the design of the pleader was sufficiently indicated to show that the plaintiff claimed that it and the defendant both held factory sites under conveyances from Howard, that there was a duty on the part of the defendant to limit the amount of water or water-power taken from the stream to not more than one nineteenth part of the whole, and that it was violating that duty, to the damage of the plaintiff. This presents a case within the contemplation of section 5098 of the Civil Code, above quoted.

This whole question of amendment has been so thoroughly discussed in *Ellison* v. *Georgia R. Co.,* 87 *Ga.* 691 (13 S. E. 809),

and *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (48 S. E. 318), that little more can be done than to cite and apply those decisions. There are cases in which rulings have been made not in harmony with the two just cited. But, speaking in general terms, they may be divided into two classes,—those which preceded the *Ellison* case and were overruled by it, and those which came after it and were overruled by the *Anglin* case. And now the rule has been crystalized into a section of the code. We have no disposition to wander again, certainly not intentionally, from a rule which looks to substance more than to mere form, which treats amendment as "a resource against waste," where there is enough to amend by, and which has in view the practical administration of justice rather than the dialectical niceties of ancient pleading. See also *Reid* v. *Jones,* 127 *Ga.* 114 (56 S. E. 128) ; *Reid* v. *Hearn & Green,* Id. 117 (Id. 129) ; *Southern Ry. Co.* v. *Gardner,* Id. 320, 323 (56 S E. 454) *Georgia Ry. & Elec. Co.* v. *Reeves,* 123 *Ga.* 697 (51 S. E. 610) ; *Sweat* v. *Hendley,* Id. 332 (Id. 331) ; *Wright* v. *Horne,* Id. 87 (Id. 30) ; *Western' & Atlantic R. Co.* v. *Burnham,* Id. 28; (50 S. E. 984) ; *Swindell & Co.* v. *Saddler,* 122 *Ga.* 15 (49 S. E. 753) ; *Insurance Co. of North America* v. *Leader,* 121 *Ga.* 260 (48 S. E. 972) ; *Willis* v. *Meadors,* 64 *Ga.* 721; *Deas* v. *Sammons,* 126 *Ga.* 431, 432 (55 S. E. 170).

The deeds under which the plaintiff claims are not before us. When they shall have been produced, we can not say what they may show as to the water rights sought to be asserted. Nor can we foresee what the evidence may develop. What we now hold is that the two grounds of objection made to the proposed amendment were not well taken.

*Judgment reversed. All the Justices concur, except Holden, J., who did not preside.*