## INSURANCE COMPANY OF NORTH AMERICA
### v. LEADER.

1. Where a fire-insurance policy insures a stock of merchandise, in a described building, " against all direct loss or damage by fire," except as thereinafter provided, and contains a provision that the insurer " shall not be liable for loss caused by . . neglect of the insured to use all reasonable means to save and preserve the property at and after a fire or when the property is endangered by fire in neighboring premises," and a further provision that the insurer shall not be liable " for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount . . insured shall bear to the whole insurance " on the property, the insurer is liable for loss caused by packing and preparing the goods for removal from the premises, although they are not actually carried out of the house, if at the time the work of removal is thus begun the property is in such imminent danger of being destroyed by fire that a reasonably prudent man would take measures to protect it.

2. Where suit is brought upon such a policy for an alleged loss thereunder, and the petition alleges that, in order to prevent the probable destruction of the stock of goods by a fire, which was raging at the time, they were removed from the premises in which they were insured, whereby they were damaged in the amount claimed, an amendment to the petition which alleges that the goods were packed and prepared to be removed from the premises, whereby the damages claimed were caused, does not set up a new cause of action.

3. There was no error in refusing to allow the defendant to file a plea of accord and satisfaction, as, under a written agreement between the parties, filed in court, whereby any default that might have occurred was set aside and the defendant was allowed a specified time in which to file all such pleadings and answers, save those which it stipulated not to file, as it might have filed on or before the opening of the court on a named date, it was too late, at the time this plea was offered, to file any new and distinct defense. The amendment to the plaintiff's petition, made after this agreement was entered into, was not of sufficient materiality to destroy its force and effect.

4. It is not erroneous to exclude evidence which is irrelevant to any issue made by the pleadings in the case.

5. There was no error in refusing to give a written request in charge to the jury, which, if given, would have contained an intimation of opinion by the court upon the main issue of fact in the case.

6. It was erroneous for the court to instruct the jury that "it was the duty of the plaintiff, whenever danger from fire became so imminent as would have aroused the reasonable apprehensions of a prudent man, to remove or prepare to remove the goods from danger." This was equivalent to instructing the jury that, under the circumstances stated, the removal of the goods from the storehouse was a reasonable means to use for their preservation, when it was for the jury alone to determine whether the means resorted to by the insured for the protection of the goods were reasonable or not

7. It was not error to refuse to charge the jury that, in order for the plaintiff to recover, it was incumbent upon him to show, by the preponderance of evidence, that the danger of destruction was so direct and immediate that a failure to do what he did would have been gross negligence on his part.

Argued October 8, — Decided November 12, 1904.

Action on insurance policy. Before Judge Norwood. City court of Savannah. June 18, 1904.

Leader brought suit, returnable to the November term, 1902, of the city court of Savannah, which began on November 3, against the Insurance Company of North America, upon a certain fire-insurance policy issued to him by the Philadelphia Underwriters, composed of the defendant company and the Fire Association of Philadelphia, it being provided in the policy that, for the purpose of enforcing any claim arising under the policy, the insured might bring his action against either of the companies, and the other should be bound. The policy was issued upon a stock of merchandise belonging to the insured, contained in a described building located in the town of Higgston, Georgia. In the suit, as originally instituted, the plaintiff alleged that, on a named date, which was shortly after the policy was issued, "a fire originated in the sawmill of J. J. Cummings, in close proximity to said store,

and that, upon account of the close proximity of the said sawmill fire and the fierceness with which it burned, said storehouse and said stock of goods were in imminent danger of being destroyed by fire, and that to prevent the probable destruction of said stock of goods by fire, . . petitioner had the same removed from said storehouse, and that in moving the same they were damaged by the handling thereof," in a named sum. Attached to the petition was a copy of the policy sued upon. On November 11, 1902, the defendant up to that time not having filed any answer, the parties entered into a written agreement which, in substance, was as follows: The plaintiff agreed that the defendant might, within five days from date, file such pleadings or answers as it might have filed on or before the opening of the court on the third of that month, and that any default which might have arisen by reason of its failure to file a defense on or before that time should be set aside. The defendant agreed not to defend upon the ground that the plaintiff had carried additional insurance without its written consent, nor upon the ground that the plaintiff failed to comply with the conditions of the policy as to notice of alleged loss or damage, or preliminary proofs of loss, admitting that it had denied liability at once and waived notice of the loss and proofs thereof. On the day after this agreement, the defendant demurred to the petition, upon the ground that the damage claimed was not within the terms of the policy, the insurance being against all direct loss or damage, " and the damage claimed not being a direct loss or damage." On the same day, subject to this demurrer, it filed its answer, the contents of which it is unnecessary to state further than to say that it admitted issuing to the plaintiff the policy sued upon, and the occurrence of the fire referred to in the petition, and denied the allegations as to the proximity of the fire to the storehouse which contained the property insured, and that, to prevent the probable destruction of the goods by fire, the plaintiff had removed them from the building and thereby sustained the damages alleged. At the July term, 1903, the court overruled the demurrer, and the defendant filed exceptions pendente lite to this ruling. On August 4, 1903, the plaintiff filed in the clerk's office a proposed amendment to his petition, in which he made certain allegations as to the buildings and property consumed by the fire, and alleged that, to prevent

the destruction of his goods by fire, he had had them packed and prepared to be removed from the storehouse, and that in packing and preparing them to be moved from the house they were damaged to the extent alleged in the petition.  This amendment was subsequently allowed by the court, over the objections of the defendant, the objections being, that it set forth a new cause of action, and that under the policy sued on the defendant was not liable for damages incident to the packing and preparing of the goods for removal.  To this ruling the defendant also filed exceptions pendente lite.  The defendant then offered an amendment to its answer, in which amendment it alleged that, on January 21, 1902, after the fire mentioned in the plaintiff's petition and before the suit was filed, it had paid to the plaintiff $18.41, "in full accord, satisfaction, and settlement of his claim under the policy, the plaintiff reciting in his written receipt and acquittance . . . that he had received this sum as the return premium" on the policy sued on, "and that he then and there cancelled and rendered void the said policy;" and that the plaintiff did not surrender the policy at the time, but promised to do so, and gave as a reason for not doing so that it was in the hands of his attorney. The plaintiff objected to the allowance of this amendment, his objections being, that the defendant was estopped from setting up the matter therein contained, by the above-mentioned agreement of November 11, 1902 ; that the amendment showed that there was no consideration for an accord; that it showed that there was no accord and satisfaction, but merely a cancellation of the policy and a release of the unearned premium.  The trial judge sustained the objections and disallowed the amendment, because of the agreement of November 11, 1902, being of opinion that, under that agreement, all defenses that could have been filed at that time had to be filed within five days from the date of the agreement.  To this ruling the defendant filed exceptions pendente lite.  The defendant then answered the amendment to the plaintiff's petition, by denying all of its allegations, save those as to the origin and extent of the fire.  Upon the trial there was a verdict for the plaintiff.  The defendant filed a motion for a new trial, which was overruled, and it excepted; and in the bill of exceptions error is assigned upon the overruling of this motion, and upon each of its bills of exceptions pendente lite.

*Adams & Adams*, for plaintiff in error.

*Osborne & Lawrence*, contra.

FISH, P. J.  (After stating the facts.)    1. The contract of insurance must be considered as a whole.    While the policy, in its first clause, insures "against all direct loss or damage by fire, except as hereinafter provided," the meaning of the words, "direct loss or damage by fire," is not to be determined simply from the words themselves.    There are other provisions in the policy which show the sense in which the parties to the contract understood these words and intended to use them.    The policy contains the following provisions:    "These companies shall not be liable for loss caused  . . by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire or when the property is endangered by fire in neighboring premises."    "If property covered by this policy is so endangered by fire as to require removal to a place of safety, and is so removed, that part of this policy in excess of its proportion of any loss, and of the value of property remaining in the original location, shall, for the ensuing five days only, cover the property so removed in the new location;" etc.    "These companies shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property," etc.    In view of these provisions of the policy, as well as those of our Civil Code, § 2094, counsel for the plaintiff in error have abandoned the exceptions to the overruling of the demurrer to the plaintiff's original petition, which was based upon the idea that loss or damage by removal of the goods from the location in which they had been insured, in order to prevent their destruction by fire, was not covered by the policy.  But, making a distinction between loss or damage by removal and loss or damage by preparations for removal, they still insist upon the exceptions to the allowance of the amendment to the petition.    We will consider the objections to the allowance of this amendment in their inverse order.    The second of these objections presents the question whether the defendant, under the contract of insurance, would be liable for damages to the property insured, caused by packing and preparing

the goods for removal from the premises in order to prevent their being destroyed by fire. There is plenty of outside authority for holding that when the contract of insurance requires the insured to use all reasonable efforts to save the property from destruction by a fire which threatens to ignite and consume it, the insurer is liable to him for loss sustained in consequence of his compliance with the obligation thus imposed upon him. Mutual Ins. Co. v. Agnew, 34 Pa. St. 96; Case v. Hartford Fire Ins. Co., 13 Ill. 676; Talaman v. Citizens' Mut. Ins. Co., 16 La. Ann. 426. See also Thompson v. Montreal Ins. Co., 6 U. C. Q. B. 319. The rule is so laid down in 3 Joyce on Ins. § 2812. Besides, this is a Georgia contract, and must be construed in the light of the provisions of section 2094 of the Civil Code, which reads as follows: "A loss or injury may occur from fire without the actual burning of the articles or property, as a house blown up to stop a conflagration, or goods removed in imminent danger, or damage by water used to extinguish the flames." Clearly this is equivalent to declaring that, in the instances enumerated, and others of like character, the fire is to be considered the proximate cause of the loss or injury. This is in accordance with the well-established rule deducible from the decisions of other courts and the principles announced by the leading text-writers upon the subject of fire insurance. 2 Biddle on Ins. § 651; 2 May on Ins. § 404; Kerr on Ins. 358; 1 Wood on Ins. § 106; Elliott on Ins. § 221; 3 Joyce on Ins. §§ 2811, 2812, 2821, 2824, 2832.

Much stress has been laid by counsel for the plaintiff in error upon the adjective "direct" in the phrase "all direct loss or damage by fire," but, in our opinion, there is no peculiar restrictive force in the adjective here used, especially when we consider that this contract was made in the light of the above-quoted provisions of our Civil Code. "Direct," as here used, means no more and no less than "proximate" or "immediate." We agree with Elliott, when he says: "'Direct loss or damage by fire' means loss or damage accruing directly from fire as the destroying agency, in contradistinction to the remoteness of fire as such agency. The word 'direct' means merely the immediate or proximate as distinguished from the remote cause." It was so held in Ermentrout v. Girard etc. Ins. Co., 63 Minn. 305, 56 Am. St. R. 481, which case the author cites in support of the text. In sup-

port of a contrary view, counsel for plaintiff in error cite Cali-fornia Ins. Co. *v.* Union Compress Co., 133 U. S. 387, 416. This case was also relied on by counsel for the defendant in the Minnesota case above cited, and in reference thereto the Minnesota court said: "Counsel for defendant cites . . some language used by way of illustration in California Ins. Co. *v.* Union Compress Co., 133 U. S. 387, 416, in which the court names 'destruction through the falling of burning walls' as an instance of remoteness of agency. The question was not before the court, for in that case the insured property was physically burned by the direct action of fire. If the court meant what counsel claims, we can not avoid the conclusion that the illustration was, to say the least of it, an unfortunate one." In 1 Wood on Insurance, 265, the author says: "The insurer is liable for a loss happening to the property insured, from the peril insured against, when the peril covered by the policy is the proximate cause of the loss. He is only relieved from liability when the peril insured against is the remote cause of the loss, or the loss results from the fault of the insured, or when from his laches or fraud the contract is avoided. When the insurance is against loss by fire, the insurer is liable for any damage done to the property by reason of a fire, even though the property itself was not burned, or in anywise injured by fire, if the fire was the proximate cause of such damage, and the damage arose in consequence of efforts reasonably made by the assured or others, in view of the imminence of the peril, to preserve the property from conflagration, which must be judged of from the peculiar circumstances of each case."

In this case, however, in addition to what has been said above, we have the construction which the parties themselves placed upon the phrase, "all direct loss or damage by fire," and we find that even the insurers, by a subsequent provision inserted in the contract, gave to this phrase a construction sufficiently broad and liberal to include "loss by and expense of removal from premises endangered by fire." It is to be observed that the provision to which we now refer does not declare that, in addition to the liability expressed by the words, "all direct loss or damage by fire," the insurance companies shall be liable for "loss by and expense of removal from premises endangered by fire," but, in limiting the amount of any liability of these insurers in the

event the property is also insured in other companies, there is an incidental recognition and acknowledgment, by the insurers, of such liability under the original words.    It is not, as counsel for the plaintiff in error contend, an express modification and enlargement of the natural meaning of the words, "direct loss or damage by fire," applicable only to "loss by and expense of removal," but simply amounts to an acknowledgment that, under the original language, the insurers would be liable for such loss and expense. If it were otherwise, we are unable to agree with counsel in the fine distinction which they seek to draw between loss by removal and loss by preparations for removal.    Certainly if the goods had been actually carried out of the house, taking them from the shelves, counters, and other places of deposit in the storehouse, and packing and preparing them to be carried out of the house, with reasonable care for their safety and protection from unnecessary injury, would be included in the act of removal from the premises.    Then there could be no distinction between damages of removal occurring in the house and damages of removal occurring outside of the house, and, in our opinion, there can be none now.    Even if the undertaking of the insurers be construed to be that they would only be responsible for loss by the actual ignition and combustion of the goods and loss by and expense of removal from premises endangered by fire, we think it would be sticking in the bark, and clearly violative of the intent and meaning of the contract, to hold that they were not responsible for damages inflicted upon the goods by preparations for removal made under circumstances which, at the time, rendered removal apparently necessary.    Certainly the assured should be placed in no worse position by suspending, when he believed the imminence of the danger had passed, an act of removal, reasonably and properly begun, and thereby saving both himself and the insurers from further loss, than he would have been if he had completed the act by having his goods carried out of the house.

2. The amendment to the petition did not set forth a new cause of action.    We have seen that the damages claimed in the amendment to have been inflicted on the goods were embraced in the damages set up in the original petition, and that the act of removal alleged in the original petition embraced the preparations for removal alleged in the amendment.    But, aside from this, it

is clear that the amendment did not set forth a new cause of action. After the petition was amended, it set forth the same right of the plaintiff, the same duty of the defendant, and the same violation of that duty, as it did before. The wrong complained of was the same, viz., the breach of the contract by the failure and refusal of the defendant to indemnify the plaintiff, in accordance with the contract sued on, for damage to the property insured by fire. "Relatively to the law of pleading, a cause of action is some particular right of the plaintiff against the defendant, together with some definite violation of that right." *City of Columbus* v: *Anglin*, 120 *Ga.* 785. The particular right of the plaintiff against the defendant was the right to be indemnified, as provided in the contract sued on, for loss or damage by fire of the property insured; the definite violation of that right was the refusal of the defendant to so indemnify him, after such loss or damage had been sustained and proper demand for such reimbursement had been made. It is obvious that the amendment changed neither the particular right of the plaintiff, nor the definite violation of such right, as alleged in the original petition. "No new and distinct cause of action is added to a petition by an amendment which contains additional matter descriptive of the same wrong pleaded in the original petition, and which does not plead any other or different wrong." Ibid. If the plaintiff had set forth the contract of insurance, the occurrence of the described fire within the period of time covered by the policy, the fact that the property insured was damaged by such fire in a named amount, and that the defendant, upon proper demand by him, had refused to indemnify him for his loss, according to the contract, without alleging just how the fire damaged the property, he would have set up the same cause of action which he did in his original petition and in the petition as amended. However subject such a petition may have been to special demurrer for want of specific and definite allegations as to the way in which the fire caused the damage complained of, it would not have been subject to general demurrer upon the ground that it set forth no cause of action; and it is obvious that if after filing such a petition he should amend it by setting out how the fire caused the damage to the property, he would not change his cause of action. In the present case all that the amendment did was to slightly

vary the allegation as to the precise way in which the property was damaged by the fire.

3. There was no error in disallowing the amendment to the answer of the defendant, setting up an alleged accord and satisfaction prior to the suit. Irrespective of the other objections urged, in the court below, by the plaintiff to the allowance of this amendment, the court was right in holding that, under the agreement of the parties in reference to opening the default, it was too late for the defendant to file this plea. Under that agreement, the defendant was allowed five days in which to file such pleadings or answers as it might have filed on or before the opening of the court on the 3d of September, 1902. It clearly might have then filed this plea of accord and satisfaction, and was consequently bound to file it within the time specified, or not at all. The contention of counsel for defendant, that this agreement simply amounted to an extension of the time for pleading, is not sound. The agreement was not that the defendant might, within five days, open the default, but it was that the defendant might, within such time, file such pleadings or answers as it could have filed before the default occurred; and this necessarily contemplated that all such defenses, if filed at all, were to be filed within the time stipulated. Counsel also contend that the defendant had the right to file this plea at the time it was offered, because the plaintiff, after the default and the agreement referred to, had amended his petition as heretofore indicated, which, they contend, was " in a most material respect." As already indicated, we do not think that this amendment was of sufficient materiality to open the case for further pleas by the defendant.

4. One ground of the motion for a new trial was as follows: " Because the court erred in refusing, upon the objection of plaintiff, to admit as evidence the following paper previously identified by the plaintiff as having been signed by him, and it being offered by the defendant in evidence, to wit: 'Higgston, Ga., January 21, 1902. $18.41. Received of E. T. Gentry & Co., agents, eighteen 41/100 dollars return premium Philadelphia Underwriters Policy No. 888022, which is this day cancelled and rendered void. [Signed] Hyman Leader. Witness. W. B. Bussey.'"

This evidently was the receipt upon which the defendant had based its plea of accord, satisfaction, and settlement, which the

court had disallowed. It was clearly irrelevant to any issue made by the pleadings upon which the case was being tried, and was, therefore, properly excluded.

5. There was no error in refusing to give the following written request in charge to the jury : "Even if you should find that the fire was in close proximity and the peril was imminent when the plaintiff prepared his goods to remove, yet, if you further find that proper prudence and precaution would have dictated another course, such as the protection of the roof of the house, then the plaintiff can not charge the defendant with the results of his failure to exercise such prudence and precaution." This instruction, if given, would have contained an intimation of opinion by the court upon the main issue of fact in the case. It would have been equivalent to instructing the jury that if, as was not to be expected, they should find that the plaintiff's contention as to the proximity of the fire and the imminence of the peril was true, and yet should further find, then, etc. Besides, the plaintiff was not bound, when the emergency was on him, to adopt the best means for saving and preserving the property; he was only required to use reasonable means. If the course which he pursued was such as a reasonably prudent man would have adopted under similar circumstances, it would make no difference whether there was really a better and more prudent course open to him or not.

6. Two of the grounds of the motion for a new trial present substantially the same question, and may, therefore, be considered together. That question is, whether it was error for the court to charge the jury that, as the policy provided that the insurers should not be liable for loss caused "by the neglect of the insured to use all reasonable means to save and preserve the property at and after a fire or when the property [should be] endangered by fire in neighboring premises," it "was the duty of the plaintiff, whenever danger from fire became so imminent as would have aroused the reasonable apprehensions of a prudent man, to remove or prepare to remove the goods from danger." It is alleged that it was error for the court to assume that, under the circumstances stated, proper prudence dictated preparations to remove the goods, and not other means of preservation. In our opinion, the instructions complained of were erroneous, as they, in effect, charged the jury that the removal of the goods from the storehouse was a

reasonable means to save and preserve them.　This was an expression of opinion upon a question of fact which the jury alone had the right to determine.　It was for the jury to determine whether the danger of the destruction of the goods by the fire was so imminent as to arouse the apprehensions of a reasonably prudent man that they would be destroyed unless measures were taken to protect them, and, if so, then to determine whether the measures, if any, taken by the insured to protect and preserve them were reasonable means for this purpose, that is, such as a prudent man might have adopted under the circumstances.　The court very properly left the preliminary question, as to apparent imminence of peril and consequent necessity for measures of protection, to the jury, and should also have left to the jury the determination of the question whether, under the circumstances, the removal of the goods from the building endangered by the fire was a reasonable means to use for their preservation.　The court should not have told the jury that it was the duty of the insured to do a specified thing for the protection of the goods, but should have instructed the jury that it was his duty to use reasonable means for this purpose, and that it was for them to decide whether, under the circumstances, the means which he resorted to, if any, were reasonable or unreasonable.　"Particular means or measures of diligence appropriate for use by [a] party should be left to the jury."　*Smith* v. *Savannah, Florida & Western Ry. Co.*, 84 *Ga.* 698.

7. Another ground of the motion for a new trial was, that the court erred in refusing to give the following written request in charge to the jury: "Plaintiff is not denied recovery simply because he made a mistake and it turned out that it was not necessary to disturb his goods.　At the same time, it is not sufficient for him to show that he, in good faith, really believing that this was necessary, did disturb his goods and prepared to remove them.　In order for him to recover, he must show to your satisfaction, by the preponderance of evidence, that the danger of destruction was so direct and immediate that a failure to do what he did would have been gross negligence on his part."　The court struck the words "gross negligence on his part," and substituted in lieu thereof the words "such negligence on his part as would have defeated his recovery had his goods been burned," and gave

the request as thus changed.    The assignment of error merely presents the question whether the court erred in not giving the request just as presented.    We do not think that the court erred in not charging that it was incumbent upon the plaintiff to show that "the danger of destruction was so direct and immediate that a failure to do what he did would have been gross negligence on his part."    In our opinion, the policy made it the duty of the insured "to use all reasonable means to save and preserve the property," whenever it appeared to a reasonably prudent man that it was likely to be destroyed by fire if he did not do so.    He was neither bound, nor had he the right, to wait until the danger of destruction became "so direct and immediate" that it would be "gross negligence on his part" not to exert himself to save the property.    If, at the time he began to remove his goods, ordinary diligence required him to do so, then he was clearly justified in beginning the work of removal.    "Ordinary diligence is that care which every prudent man takes of his own property of a similar nature; the absence of such diligence is termed ordinary neglect." Civil Code, § 2898.    The absence of such diligence is not "gross negligence."    "Gross neglect is the want of that care which every man of common sense, how inattentive soever he may be, takes of his own property."    Civil Code, § 2900.    The standard of care in this case, erected by the contract, was that which every prudent man would have exercised, under similar circumstances, for the protection of his own property; not merely that which every man of common sense, how inattentive soever he may be, would have exercised in caring for his own property.    The charge, if given as requested, would have been equivalent to instructing the jury that, under the contract, the insured was only required to exercise slight diligence to protect and preserve the property when it was endangered by fire, when, in our view, he was required to exercise ordinary diligence for this purpose.

The judgment of the court below must be reversed for the error committed in instructing the jury.

*Judgment reversed.    All the Justices concur.*