CARTLEDGE *et al.* v. CITY COUNCIL OF AUGUSTA *et al.*

No. 13074. OCTOBER 13, 1939. REHEARING DENIED NOVEMBER 17, 1939.

*Pierce Brothers,* for plaintiffs.

*F. Frederick Kennedy, William K. Miller, W. Inman Curry, William T. Gary,* and *C. W. Killebrew,* for defendants.

GRICE, Justice. ▮ The demurrers are both general and special, and consist of numerous grounds. Among other reasons assigned by demurrants as to why the petition should be dismissed are, misjoinder of parties defendant; absence of necessary parties, to wit, the Governor and Secretary of State; that if plaintiffs have any right to contest the election on the ground of illegal or fraudulent votes, such right should have been asserted before declaration of the consolidation of the returns and the proclamation of the Governor declaring the amendment adopted; that the superior court of Richmond County is without jurisdiction to hear a contest on said election and go behind the act of the Secretary of State in tabulating, consolidating, and declaring the result of the election, and the act of the Governor in declaring by proclamation

the adoption of the amendment; and that the court is without authority to open the ballot-boxes and eliminate the illegal voters and recount and tabulate the election returns in Richmond County. In substance, the demurrants take the position that the petitioners can not, in the manner sought by them, call in question the validity of this election. It is the insistence of the plaintiffs that the proposed amendment was not properly submitted to the people of the State for ratification or rejection, because during the two weeks immediately before the election there was not published in Richmond County, in the newspaper in which sheriff's advertisements are published, a brief and concise summary of such amendment. It is not claimed that no summary at all was published in such newspaper, but that no such summary, i. e., a brief and concise summary was published. Nor is it alleged that such a summary failed to appear in every other newspaper in the State carrying the sheriff's advertisements, or that the amendment itself was not published in one or more newspapers in each congressional district for two months before the election, as required by the constitution, art. 13, sec. 1, par. 1 (Code, § 2-8601).

That paragraph of the constitution dealing with amendments itself provides the method of giving notice thereof to the voters. After the required number of each branch of the General Assembly have voted to submit the proposal to amend, and the aye and nay votes have been entered on the journals, the proposed amendment shall be submitted to the people. It is required that the General Assembly make provision for its publication in one or more newspapers in each congressional district. That much discretion is given to the legislature,—to decide whether to publish the amendment in more than one newspaper in each congressional district. The General Assembly must make provision for its appearance in one paper in each district. The constitution also charges the legislature with making provision for its publication, but does not declare that that body shall direct that the Governor do this, the secretary of the Senate, or clerk of the House, or any other official of the State. In its submission of this amendment, the General Assembly did provide that the Governor should have the amendment published in one newspaper in each congressional district of the State, and the petition in the instant case does not allege that that was not done. The amendment having been pub-

lished as required by the constitution, the legality of its submission can not be affected by the fact that a brief and concise summary of it was not published in the one newspaper in this State in which the sheriff's advertisements of the County of Richmond are carried, notwithstanding the provisions of the act approved March 24, 1939, which gave direction that this be done. The requirement of the act that a brief and concise summary of the proposed amendment be published in every newspaper in Georgia carrying the sheriff's advertisements is not the exercise of discretion on the part of the General Assembly as to whether the amendment itself be published in more than one newspaper in each congressional district of the State. The constitution itself having declared what shall be done when an amendment is proposed, it follows that when these requirements are complied with, the submission is legal. Indeed, a substantial compliance therewith as to publication will suffice. *Hammond* v. *Clark,* 136 *Ga.* 313 (71 S. E. 479, 38 L. R. A. (N. S.) 77). Two thirds of the membership of each branch of the legislature, their votes being placed upon the journals, its publication in at least one public gazette in each of the congressional districts of the State, and a majority vote of the people who vote upon it at the next general election held, is the manner contemplated by the framers for altering any provision of our organic law. The proposal itself is not an act of the General Assembly, although it be proposed in the form of an act. *Cooney* v. *Foote,* 142 *Ga.* 647 (83 S. E. 537, Ann. Cas. 1916B, 1001).

It is the right of a people to alter their form of government, or to change the constitution. If this is done by amendment, their chosen representatives in the General Assembly initiate, and the body of the electorate either approve or reject. It was the evident purpose of the framers of the constitution to provide a direct and simple plan for amending it. They specified the steps to be taken, and who should take them. In acting on a proposal to amend the constitution, the General Assembly is not legislating at all, nor can they by legislation add to, take from, or alter the mode of its submission to the people. If the amendment be proposed in the manner pointed out in the constitution, the General Assembly have no right to throw requirements around it in addition to those specified in the constitution. In an opinion

rendered to Governor Northen on July 22, 1892, and published in vol. 1 of Jones' Compilation of the Opinions of the Attorneys-General, 30, 34-5, Mr. Attorney-General Little said: "The constitution itself provides the only methods by which that instrument may be amended, and these are two: 1st. By convention of the people. 2d. An amendment may be proposed in the Senate or House; if the same shall be agreed to by two thirds of the members elected to each of the two houses, such proposed amendment shall be entered on their journal, with the ayes and nays taken thereon. The General Assembly shall cause amendments to be published in one or more newspapers in each congressional district for two months previous to the time of holding the next general election, and provide for submission of such proposed amendments at such election. If ratified by a majority of the electors then voting, the same shall become a part of the constitution. When more than one amendment is submitted at the same time, they shall be so submitted as to enable electors to vote on each amendment separately. It is not necessary under these terms of the constitution that the amendment shall be in any particular form. It is not necessary that it shall be by a bill or resolution. It is not necessary that it shall be read three times on three separate days in each or either house. It is not necessary that it shall be sent to the Governor for his approval. On the contrary, the proposed amendment has none of the force and validity of a law. The approval or disapproval by the Executive would not affect it. It is a simple proposition made by the two houses to amend the constitution; but while as such a proposition it has no force and effect, it is the method prescribed by which, the legislature and the people concurring, the constitution is changed. The validity of the amendment is given by the voters." These views are in accord with those expressed in an opinion given in response to a request from Governor Smith, by Attorney-General Hart, on August 18, 1908, and published in vol. 2 of Jones' Compilation, 87 et seq.

When the proposed amendment was advertised in accordance with the terms of the constitution relating thereto, its validity can not be successfully attacked on the ground that some additional requirement as to publication. placed by the General Assembly, had not strictly been complied with. An act of the General

Assembly containing some additional provision as to publication will at the most be treated as directory only. Counsel for the plaintiffs argue that the expression, in that paragraph of the constitution relating to the submission of an amendment, to wit, that the General Assembly "shall also provide for a submission of such proposed amendment or amendments to the people at said next general election," is a grant by the constitution to the General Assembly of a discretion as to what publication shall be had. The only discretion left with the General Assembly as to publication was as to whether they would provide for the publication of the amendment itself in more than one newspaper in each congressional district. The clause which provides that the General Assembly shall provide for the submission of such amendment is in addition to the clause dealing with publication. "And the General Assembly shall cause such amendment or amendments to be published in one or more newspapers in each congressional district, for two months previous to the time of holding the next general election, and *shall also provide for a submission of such proposed amendment or amendments to the people at said next general election,*" etc. (Italics ours.) These duties our organic law places on the General Assembly, and the italicized words merely make certain that it is the General Assembly's responsibility to see to it that any proposed amendment is submitted to the people at the next general election, just as it was made their duty, and theirs alone, to propose the amendment to the people.

■ It is also urged by the plaintiffs that the proposed amendment has not become a part of the constitution, because it was not legally submitted to the people, nor was it properly voted on by all the people of the State, for that no election at all was held in Morgan, Marion, and Hart Counties; that in these three counties there were approximately 4285 votes; and as to each county the allegation is that "had said election been submitted to the people in said county, they would have voted against such amendment." The petition states that the entire State vote for the amendment was 17,059, and against it 10,230. To whose fault, if it was the fault of any one, can be attributed the failure to hold an election in the three counties named, does not appear. It would be a monstrous proposition to hold that the failure of three counties out of one hundred and fifty-nine to open the polls

on the day when a constitutional amendment is being voted upon would affect the validity of its submission to the people or of the election itself; or, even in the face of an allegation that they would have voted against the amendment, to count the entire number of registered voters in the three counties as voting against it. The tabulation of the result must be based on the number of ballots actually cast throughout the State who vote either for or against it.

■ The third ground of attack relates to charges of fraud in the election held in Richmond and Chatham Counties. With respect to the latter county, the allegations of fraud are general, and wholly insufficient. *Cole* v. *McClendon,* 109 *Ga.* 183 (34 S. E. 384); *Paulk* v. *Lee,* 117 *Ga.* 6 (43 S. E. 368); *Lowrey* v. *Chealham,* 131 *Ga.* 320 (62 S. E. 226); *West* v. *Lewis,* 188 *Ga.* 437 (4 S. E. 2d, 171.) But as to Richmond County the charges are specific, and among the prayers is one that the court appoint some disinterested person to open the ballot-boxes and take evidence touching the fraud alleged, that the facts may be properly brought before the court. This is an effort to contest the election by a recount of the votes in that county. The demurrer raises the question whether or not the court is empowered to do this. Counsel for plaintiffs rely on *Hammond* v. *Clark,* 136 *Ga.* 313 (71 S. E. 479, 38 L. R. A. (N. S.) 77), as authority for the position that a contest of an election on a constitutional amendment is a judicial question. In that decision it was said: "In the absence of some other exclusive method of determination provided by the constitution, whether an amendment has been properly proposed and adopted according to the requirements of the existing constitution, and has become a part of the fundamental law of the State, is generally a judicial question." The decision, however, did not deal with fraud in the election, not was it there questioned that the proposed amendment had received the requisite number of affirmative votes. No question of fact was raised, but the whole case turned on legal questions. We have given full effect to the ruling laid down in that case, in examining and deciding the two questions heretofore discussed, to wit, the failure to open the polls in Marion, Morgan, and Hart Counties, and the failure to advertise in one newspaper a brief and concise summary of the amendment; but the decision cited does not support the petitioners in their further contention that the superior court of Richmond

County should go into the ballot-boxes and decide an election contest. The constitution is silent as to the mode of ascertaining the result of the voting, and of determining whether the proposed amendment received the number of legal votes necessary for its adoption. That being true, it is within the ordinary function of the General Assembly to create a tribunal for such purpose and to clothe it with appropriate powers, the exercise of which is conclusive. 12 C. J. 695, § 33; St. Louis Southwestern Ry. Co. *v.* Kavanaugh, 78 Ark. 468 (96 S. W. 409). The act to propose the constitutional amendment here involved (Ga. L. 1939, p. 11) declared: "and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote for ratification thereof, when the result shall be consolidated as now required by law . . the said amendment shall become a part of article VII, section 7, paragraph 1, of the constitution of the State of Georgia, and the Governor shall make a proclamation thereof," etc.

The title of the act approved March 24, 1939 (Ga. L. 1939, p. 305) is, "An act to carry into effect article 13, section 1, paragraph 1, of the constitution of Georgia, by providing for the publication of any proposed amendment to the constitution of this State, for submission of the same to the people, and for ascertaining and declaring the result of the election thereon; and for other purposes." We have here an enactment providing (a) that the returns of the election shall be certified to the secretary of State, (b) that he shall canvass the same, (c) ascertain the result of such election, and (d) certify the same to the Governor, (e) who shall, if the certificate of the Secretary of State shows that a majority voted in favor of ratification so declare by his proclamation to be issued within ten days, etc. The legislature has not conferred on the courts the power to hear and determine an election contest of this character, and the courts have no such inherent power. This is not a case of property or person of the citizen imperiled by a pretended election which was really unauthorized by law. Questions as to the qualification of voters, whether their votes were illegal or not, are necessarily political in character. *Avery* v. *Hale,* 167 *Ga.* 252, 254 (145 S. E. 76). Elections belong to the political branch of the government, and courts of equity will not interfere to protect a *purely* political right.

*Printup* v. *Adkins,* 150 *Ga.* 347 (103 S. E. 843). This principle was applied in *Ivey* v. *Rome,* 129 *Ga.* 286 (58 S. E. 852), where it was said: "The petition seeks to raise questions as to the effect of irregularities in the manner of conducting the election, counting the votes, and declaring the result. In other words it is sought, by the petitioners, to have a court of equity hear and determine a contest of this election. The judge of the superior court in the first instance, and the judge and a jury of twelve men in the second instance, are called upon to determine questions which, under the act of the General Assembly, were to be determined by the managers of the election. . . The courts are powerless to interfere, unless the legislature should see proper to confer such power on them." In *Harris* v. *Sheffield,* 128 *Ga.* 299, 303 (57 S. E. 305), it was said: "Elections belong to the political branch of the government, and are beyond the control of judicial power. It was not designed, when the fundamental law of the State was formed, that either department of government should interfere with the control of the other; and it is for the political power of the State, within the limits of the constitution, to provide the manner in which elections shall be held. And until the courts are empowered to act, by the constitution or legislative enactment, they must refrain from interference." In *Tupper* v. *Dart,* 104 *Ga.* 179, 183 (30 S. E. 624), this court said: "A court of equity has no power to try a contested election, even where the statute has provided no mode for contesting; nor to restrain canvassers from canvassing the returns of an election. McCrary on Elections, § 386." Other cases in which this court has recognized the principle now under discussion are cited in the opinions above referred to. In the instant case, the Secretary of State having canvassed the returns of the election, ascertained the result, and certified the same to the Governor, his certificate showing that a majority voted in favor of ratifying the same, and the Governor having issued his proclamation in accordance therewith, the courts are not permitted to go behind the same. The legislature had the right to clothe the Secretary of State with the power to determine the result; they have done so; that official has acted; and the amendment must be given effect as a part of our constitution.

*Judgment affirmed. All the Justices concur.*

BELL, Justice, concurs in the judgment only.