## 27884. CRANDALL *v.* SAMMONS.

DECIDED JANUARY 31, 1940. REHEARING DENIED MARCH 6, 1940.

*Harris, Harris, Russell & Weaver,* for plaintiff.

*Joseph W. Popper, William H. Harbin,* for defendant.

SUTTON, J. John R. Crandall brought suit against Jack L. Sammons, to recover damages for injuries sustained by him while a guest of the defendant in an automobile driven by the latter. The jury returned a verdict for the defendant. The plaintiff filed a motion for new trial on the general grounds, and by amendment

added several special grounds. The exception is to the judgment overruling the motion for new trial, but only the special grounds are argued or insisted on in the brief of counsel for the plaintiff. It is shown by the evidence that the plaintiff and three others were guests of the defendant and were returning to Macon from an airport located a short distance from the city, one guest sitting on the front seat of the automobile with the defendant driver and the others occupying the rear seat, the plaintiff being on the right-hand side. On account of the heavy line of traffic, the cars were continually stopping and starting. At one point, when the line of traffic had halted, one of the guests called attention to the unusual construction of a house on the right-hand side of the road, and some conversation took place while the occupants were looking in the direction of the house and away from the line of traffic. Sammons, while so looking and paying no attention to the traffic in front of him, suddenly started his car in low gear, and while traveling at a rate of speed estimated at from fifteen to twenty miles an hour drove violently into the rear of the car immediately in front of him. It appears that one or two seconds elapsed while the attention of the driver was diverted toward the house. Crandall was thrown to the top of the car against a panel, receiving a blow upon the head, was somewhat dazed, and suffered a headache, but it did not appear that he was substantially injured, and it was only when he consulted a specialist two or three months later that it was found that he had a cataract on one eye, the sight of which was subsequently lost. The evidence was conflicting as to whether or not the loss of sight was the result of the blow he received in the car. The petition alleged that he had no way of avoiding the consequences of the alleged gross negligence of the defendant at the time and place in question, and the answer of the defendant denied such allegation.

■ Grounds 1 and 2 of the amendment to the motion for new trial complain that the court erred in charging the jury, in effect, that the plaintiff was bound by the rule of ordinary care and diligence, and was not entitled to recover if by the exercise of ordinary care he could have avoided the consequences to himself of the defendant's negligence; it being contended that under the evidence the plaintiff did not know and had no opportunity to discover that the defendant was negligent, and that the charge of the court was

unauthorized and placed an illegal burden upon, the plaintiff. It can not be determined from the jury's verdict whether it was returned for the reason that they found that the defendant was not grossly negligent, or whether they found that he was, but also found that by the exercise of ordinary care the plaintiff might have avoided the consequences to himself of the defendant's negligence. It is well settled that, except in plain and indisputable cases, the question of negligence is one peculiarly for the determination of the jury, and from a careful consideration of the testimony of all the witnesses in the present case it can not be said as a matter of law that the defendant was or was not grossly negligent. The jury might reasonably have found that he was or was not. The defendant contends that the verdict was demanded as a matter of law, because the evidence showed that his attention was diverted for only one or two seconds, and that his act followed a natural instinct to yield to the suggestion of looking at the house, and did not constitute a failure to use even slight diligence. It appears, however, that there was no emergency or any outcry or warning which would reasonably startle the defendant and cause him to assume that his attention was needed in another direction. The situation was one in which no excitement prevailed, and where no compelling influence operated to affect the exercise of normal judgment. The question resolves itself into a determination of whether or not his lack of attention to the roadway for the brief interval of one or two seconds, under the circumstances, was a failure to use even slight care for the safety of his guests. A discussion of cases heretofore before this court is deemed unprofitable, inasmuch as each depends on its own particular facts. Under the pleadings and the evidence the charge of the court was appropriate and proper. The plaintiff alleged that by the exercise of ordinary care he could not have avoided the consequences of the defendant's alleged negligence. This the defendant denied, and we do not think that the evidence demanded a finding as a matter of law that the plaintiff could not, in the exercise of ordinary care, have avoided the consequences of the defendant's negligence.

There was uncontradicted evidence that the defendant was not keeping a lookout ahead of him, and that he drove his car into the rear of the one immediately in front of him while all the time looking toward the house on the right side of the road. Should the

plaintiff, acting as an ordinarily prudent person, have discovered this negligence and have avoided the consequences thereof? It is true, as held in *W. & A. R. Co.* v. *Ferguson,* 113 *Ga.* 708 (39 S. E. 306, 54 L. R. A. 802), and oft reiterated, that "The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other is existing, and is either apparent, or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence;" but, as held in *Russell* v. *Bayne,* 45 *Ga. App.* 55, 56 (163 S. E. 290), "the guest can not close his eyes to known or obvious dangers arising either from the acts of the driver or from the acts of others; and if there is a danger from either cause, and the circumstances are such that it would become apparent to a person of ordinary prudence in like circumstances, then it is the duty of the guest to do whatever in the opinion of a jury a person of ordinary prudence would or should do in the same or like circumstances." (Citing.) See also *Eddleman* v. *Askew,* 50 *Ga. App.* 540 (2) (179 S. E. 247). A guest in an automobile can not at all times treat himself as "dead freight," but, when negligence on the part of the driver arises, must act as an ordinarily prudent person would act, under the same or similar circumstances, to discover it and avoid its consequences. As was said in *Moore* v. *Seaboard Air-Line Ry. Co.* 30 *Ga. App.* 466 (3) (118 S. E. 471) : "If, when the defendant's negligence was discovered, or when *in the exercise of ordinary care it could have been discovered,* the use by the decedent of his senses of sight and hearing in an ordinarily diligent way could have prevented the casualty from occurring, the plaintiff can not recover." (Italics ours.) In the present case it appears that all occupants of the automobile looked at the house. The defendant admitted that he was looking at it when he started his car, and was so engaged at the moment of impact. The plaintiff testified that he did not know that the defendant was at any time looking at the house. He was thrown about in the car, but the others managed to brace themselves and escape injury. There was apparently no reason why the plaintiff, sitting in the rear of the car, might not have observed the actions of the defendant and have become aware of his inattentiveness to traffic. In the circumstances, when the plaintiff knew that the attention of some had been attracted towards the house, and there

was general conversation about it, according to the evidence, would not the exercise of ordinary care have required that he ascertain whether or not the defendant was looking at it, and, having discovered his negligence in so doing, have warned him, or otherwise in the exercise of ordinary care have avoided the consequences of the defendant's negligence? We do not think that it could be said as a matter of law that the plaintiff could not have done so. The charge of the court was not error for any reason assigned.

▮ The third special ground of the motion for new trial complains that the court erred in charging the jury as follows: "Gentlemen, the plaintiff contends, among other things, that the vision of his right eye has been seriously impaired, and that such impairment was a direct and proximate result of the collision under investigation. On the other hand the defendant contends, among other things, that even if the vision of the plaintiff's right eye has been impaired, such impairment was not the proximate result of the collision and that the collision had nothing whatever to do with it. This is one of the issues for you to determine; and in this connection I charge you that the plaintiff's recovery, if any, would be limited to whatever injury and damage proximately resulted from the collision. He could not recover for anything that did not directly and proximately result from the collision under investigation." It is contended, that because of the sentence last quoted the charge contained an incorrect statement of the law, was calculated to confuse and mislead the jury, imposed upon the plaintiff a burden not imposed by law, and denied the plaintiff recovery for anything that did not directly result from the collision; that the use of the word "directly" in conjunction with the word "proximately" required the plaintiff to prove not only that the defendant's negligence was the proximate cause but also the direct cause of the plaintiff's injury, whereas, the two words not being synonymous, the plaintiff was not required in law to prove that his injury resulted directly from the collision, and a burden not imposed by law was thus placed upon the plaintiff; that the charge was peculiarly harmful, because the evidence showed that the full extent of the plaintiff's injury was not apparent at the time of the collision, and the impairment of his eye came on afterwards; and that the use of the word "directly" could have led the jury to think that recovery could not be had for any injury that did not *directly* follow

the impact at the time of the collision. While in a strict sense the words "directly" and "proximately" are not synonymous, because an injury may result as "the necessary and connected effect of the tortious act" (Code, § 105-2007) without being immediate, that is, may be a consequential and proximate damage rather than a damage which directly or immediately follows a tortious act, we do not think that by the words as used in the context above quoted the jury was misled and caused to believe that the plaintiff could recover only in the event the injury was immediate or direct. One of the most strongly contested issues between the parties was whether the cataract and loss of sight of the plaintiff's eye two or more months after the collision could reasonably· be said to have followed as a natural result of the blow on his head, and it was nowhere contended that, except for a temporary semidazed condition and a headache, the injury resulted immediately upon the impact. The court stated to the jury that the defendant , contended that "the collision had nothing whatever to do with" the injury, and stated that the plaintiff's recovery, if any, would be limited to whatever injury and damage *proximately* resulted from the collision. While the court then stated that the plaintiff could not recover for anything that did not "directly and proximately" result from the collision, yet, as it was clearly apparent to the jury on the trial that the injury was not claimed to have been an immediate one, that is, one happening directly upon the impact, we think that the court's charge was taken by the jury to mean only that no recovery could be had unless the injury proximately resulted from the collision, and resulted directly in the sense that it was a natural and connected sequence. While the concluding sentence of the excerpt was inapt in a strict sense, it could not be deemed more than harmless error, not requiring a reversal for the reasons assigned.

■ The charge of the court, "I charge you further, gentlemen of the jury, that it is not sufficient for the plaintiff, Crandall, to show in this case that the defendant, Sammons, may have been guilty of causing his injury. The evidence must point to the fact that he was; and where the testimony leaves the matter of the injury uncertain, and shows that any one of several things may have brought about the injury, for some of which Sammons was responsible and for some of which he was not, then the plaintiff can not recover," was error for the reason assigned, among others, in

the fourth special ground, that it placed upon the plaintiff an illegal burden. While some eye specialists testified that in their opinion the cataract and loss of eyesight were not caused by the blow received by the plaintiff at the time of the collision, another testified that in his opinion the injury was caused by such blow. Thus the jury, if they preferred to accept the opinion of this witness, would be authorized, subject to other principles of law given in charge, to return a verdict in favor of the plaintiff. The charge was not applicable to the facts of this case. This was not a case dependent upon inconclusive circumstantial evidence.

Another ground complains that, in rebuking counsel for the plaintiff because of certain conduct on his part on the trial, the court used certain language which not only unduly reflected on counsel but also had the effect of prejudicing the plaintiff's cause, and constituted reversible error. Inasmuch as the language complained of will not likely occur on another trial of the case, it is unnecessary to rule on this objection.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*