23009.   McCULLERS et al. v. WILLIAMSON et al.

ARGUED JUNE 14, 1965—DECIDED SEPTEMBER 13, 1965—
REHEARING DENIED OCTOBER 7, 1965.

*Edenfield, Heyman & Sizemore, Newell Edenfield, W. Dan Greer,* for plaintiffs in error.

*Preston & Benton, William L. Preston, Terrell W. Benton, Jr.,* contra.

*Arthur K. Bolton, Attorney General, Alfred L. Evans, Jr., Assistant Attorney General,* for party at interest not party to record.

MOBLEY, Justice.  Clark N. McCullers, Donald E. Garrett, and J. C. Shepard, Jr., as relators filed their information in the nature of a quo warranto, naming Hugh Williamson, George W. Felker, III, Aubrey Coker, and Clyde Pearce as respondents, alleging substantially as follows: that McCullers and Garrett are residents of Loganville, Ga., and Shepard of Social Circle, Ga., and all are residents, citizens and taxpayers of Walton County, Ga., and Shepard is parent of a child enrolled in the independent school system of Social Circle, Ga.; that respondents, Williamson, Felker and Coker, all of Monroe, Ga., are claiming to be members of the Board of Education of Walton County, and Pearce is claiming to be Superintendent of Walton County Schools; that the respondent board members and superintendent are claiming their respective offices under authority of a purported constitutional amendment of 1956 (H. R. NO. 105-300f) (Ga. L. 1956, p. 433), but that said purported constitutional amendment is illegal, null and void, and that for that reason the board members and superintendent should be ousted from their offices.  The grounds of the attack upon the constitutionality of

the Act will be stated and ruled upon in the opinion. A general demurrer to the petition as amended was sustained and the information in the nature of a quo warranto was dismissed.

The exception is to that judgment.

■ The parties bringing this proceeding have the standing to bring it. The petition alleges that all are residents, citizens, and taxpayers of Walton County, and two of them are parents of children enrolled in the Walton County Schools and the other is a parent of a child enrolled in the Social Circle Independent School System.

*Code* § 64-201 provides that the writ of quo warranto "must be granted at the suit of some person either claiming the office or interested therein." The plaintiffs, as residents, citizens, and taxpayers have such interest in the offices as gives them the right to test the right of the members of the board of education and county school superintendent to hold their offices. "Where the purpose is to declare the office vacant, any citizen and taxpayer may file a proceeding in the nature of a quo warranto." *Kidd v. Nelson,* 213 Ga. 417 (1) (99 SE2d 123) and cases cited.

■ Prior to, and at the time the resolution was adopted by the General Assembly and submitted to the voters for ratification or rejection, three separate and distinct school systems existed in Walton County, to wit: Monroe City School System, the Walton County School System, and the Independent School System of Social Circle. The resolution provided that Art. VIII, Sec. V, Par. I (*Code Ann.* § 2-6801) of the Constitution of Georgia of 1945 be amended by adding thereto prescribed provisions, one of which provided that all of Walton County, exclusive of that area within the corporate limits of Social Circle, shall compose one school district under control and management of a Walton County Board of Education and to be known as Walton County Schools.

The resolution provided that if a majority of the qualified registered voters residing in the existing county system and of the Monroe City School System voting in the election approve the amendment, such amendment shall become a part of the Constitution of this State.

The petition alleges that a majority of those voting in the election in each of those systems approved the amendment, but

that a majority of the voters of the Social Circle Independent School System voted against ratification.

Relators' contention is that the proposed amendment affected the Social Circle Independent School System, and that the approval of the majority of the voters of that system voting in the election was required before the local constitutional amendment could become a part of the Constitution. It is agreed that the amendment was not submitted separately to the Social Circle Independent School System for ratification or rejection by the voters, as was required, if Social Circle Independent School System is directly affected. Further, in the county-wide vote, the voters of Social Circle School System voted, and the majority of those voting voted against the adoption of the amendment. In either event, it has not been ratified by the voters of the Social Circle School District.

At the time of submission of the amendment, the Constitution, Art. XIII, Sec. I, Par. I (*Code Ann.* § 2-8101), provided in part ". . . if such proposed amendment directly affects only one or more political subdivisions of the State, then it shall also be advertised in the area to be directly affected thereby"; and further declared "if the proposed amendment is not one that directly affects the whole State, but only one or more subdivisions thereof, said amendment shall not become a part of this Constitution unless it receive both a majority of the electors qualified to vote voting thereon in the State as a whole, and also a majority of the electors qualified to vote voting thereon in the particular subdivision of [sic] subdivisions affected."

If the amendment *directly affects* the Social Circle Independent School System within the meaning of the above quoted provision of the Constitution, it has not been ratified by the people as required by the Constitution, is not a part of the Constitution, and is null and void, and the respondent members of the Board of Education of the Walton County Schools and the Superintendent of said school are not legally holding said offices, as such offices have never been created and do not exist.

At the time of adoption of the amendment and at all times since, Social Circle Independent School District had the right to give up its independent system and go into the county system by a majority vote of those voting in an election. *Code* §§ 32-1201,

—32-1203 (Ga. L. 1926, Ex. Sess., p. 40). It has not done so, nor is it alleged that it plans to do so. The thrust of the argument of the plaintiffs in error is that Social Circle is affected by the amendment, not because it provides for its merger with the county, which it does not do, but because, if it should ever decide to do so, it would have to merge with a different system (provided by the amendment) from that which existed prior to the amendment, and for that reason Social Circle is affected. The significant differences in the old and new systems are that, before the amendment, Social Circle could merge with the Walton County System which did not include the Monroe System; the board of education consisted of five members appointed by the grand jury, and the county school superintendent was elected by the people and his qualifications were fixed by statute. Under the amendment, the Monroe City School System is added to the Walton County System; until such time as Social Circle may come into the system, the board of education would consist of seven members, three of whom would be named by the Mayor and Council of Monroe from residents of Monroe, and four members from Walton County, exclusive of Monroe and Social Circle, would be appointed by the Walton County grand jury. If Social Circle should vote to come into the system there would be nine members, one of whom would come from Social Circle appointed by the Mayor and Council of Social Circle.

The only references in the amendment to Social Circle are: (1) "All of Walton County exclusive of that area lying within the limits of the City of Social Circle shall compose one school district." Rather than affecting Social Circle this simply left it alone, just where it was. (2) "At such time as Social Circle may vote to come into the system the Board shall be composed of nine members. . . (3) one member from Social Circle appointed by the Mayor and Council of Social Circle." And, Social Circle is included in "Area A" from which area one member would be elected by the grand jury. While the plaintiffs in error contend that Social Circle has only to be "affected," they argue that if it must be "directly affected" that it is directly affected. The language of the Constitution quoted above plainly states that it must be directly affected, and we so hold.

Social Circle was not directly affected by the amendment.

"Directly" means straightway, immediately, without delay; in a direct manner or way; without anything intervening. *Insurance Co. of North America v. Leader*, 121 Ga. 260, 265 (48 SE 972); *Crandell v. Sammons*, 62 Ga. App. 1 (2) (7 SE2d 575); 26A CJS 956, 957. The amendment left the Social Circle District just as it was. It was neither strengthened nor weakened. It was left to stand just as if the amendment had failed; and, so far as is known, it will so remain. It was not affected in a direct way, with nothing intervening, for there is intervening between the amendment and any effect upon Social Circle, a vote of the majority of those voting in the Social Circle School System to give up its system and go into the county system—action completely within the control of the voters of Social Circle.

It would be unreasonable to think that the framers of the Constitution intended that the Walton County School System could never be changed without the voters of Social Circle approving the change because the independent school system of Social Circle might at some time in the future decide it wanted to join that system. Would one think that the Fulton County System could never change without a vote of the Atlanta System simply because Atlanta might possibly give up its system and merge with the Fulton System some time in the future?

Whether the Social Circle system would ever be affected by the amendment is purely conjectural. Without the intervening act of a majority of its voters voting to give up its system, it would never be.

The amendment did not require ratification by the voters of the Social Circle Independent School System.

■ It is next contended that the constitutional amendment of 1956 establishing the Walton County School System is invalid because the resolution proposing it sought unlawfully to delegate the authority to determine its effective date.

The amendment provides: "The effective date of this amendment will be determined by the passing of a resolution by the present Monroe City Board of Education and the present Walton County Board of Education approving the merger of the Monroe City School System and the Walton County School System into the Walton County Schools." It is true, as contended, that the amendment does place the power in the boards of education of

the two systems to determine if and when the provisions of the amendment shall go into effect, as it does not require the boards ever to adopt such resolution, nor fix any time for doing so. However, we do not agree with the contention of plaintiffs in error that "Thus, power was unlawfully delegated sufficient to thwart the action of the electorate . . ." because the electorate, in the exercise of their wisdom, gave to the boards of education of the two systems the power to say when and if the systems would ever be merged. The mandate of the people is that the two school systems are consolidated as of the date fixed by the resolutions of the two boards of education, and that it will not go into effect unless and until such resolutions are adopted.

An amendment becomes a part of the Constitution when ratified by a majority of the electors qualified to vote for members of the General Assembly voting thereon. Art. XIII, Sec. I, Par. I (*Code Ann.* § 2-8101). The absence of anything to the contrary in a constitutional amendment would fix its operative date or the date it became effective as the day it was ratified. It seems to be settled constitutional law generally that an amendment can by its own terms defer its "effective" or "operative" date to a time subsequent to the date when it became a part of the Constitution. See 16 CJS 118, Constitutional Law, § 39 and cases cited. This is not altered by the fact that the Constitution provides that an amendment becomes a part of the Constitution when it is ratified. While the Constitution may prescribe the procedure for adoption of amendments to the Constitution (*Cartledge v. City Council of Augusta,* 189 Ga. 267, 269 (5 SE2d 661)), and those requirements are mandatory and must be strictly followed (*Seago v. Richmond County,* 218 Ga. 151, 154 (126 SE2d 657)), any attempt to limit the will of the people with respect to the substantive content of an amendment would amount to a gross infringement upon their sovereign right to establish, modify, and alter their organic law as they see fit, so long as it does not violate the Constitution of the United States. We know of no reason why the people may not amend the Constitution making its provision effective upon the action of the two school boards voting that it shall go into effect on a certain date. There is no prohibition against it in the Constitution; and, if there were,

this amendment is the latest expression of the sovereign will of the people upon the subject and "will prevail as an implied modification pro tanto of the former provision." *Cason v. State of Ga.*, 217 Ga. 339 (2) (122 SE2d 232).

■ Plaintiffs in error next contend that the provisions of the purported local constitutional amendment of 1956 with respect to the manner of selection and composition of the county board of education and county superintendent (three members elected from the City of Monroe by its mayor and council and one member from each of four defined areas in the county appointed by the grand jury and the superintendent elected by the board) violate the equal protection clause of the Fourteenth Amendment of the Constitution of the United States. They say that the classification for selection of board members and the superintendent is unreasonable, arbitrary and discriminatory because the amendment does not operate uniformly upon all the people in the district, for the reason that the people of the City of Monroe select their representatives on the board through their mayor and council and also participate in the selection of the board members from the other four areas of the district through their appointments by the grand jury, whereas the people of the four areas do not participate in the selection of the board members for the City of Monroe.

"The Supreme Court of the United States has many times affirmed the general proposition that it is not the purpose of the fourteenth amendment, in the equal-protection clause, to take from the States the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority. That a law may work hardship and inequality is not enough. Many valid laws and ordinances, from the generality of their application, necessarily have that effect. Necessarily the legislature or municipality must be allowed a wide field of choice in determining the subject-matter of laws and ordinances. Jeffrey Mfg. Co. v. Blagg, 235 U.S. 571 (35 SC 167, 59 LE 364). It is only where the legislative or municipal action is arbitrary and has no reasonable relation to a purpose which it is competent for government to effect that the legislature or municipality transcends the limits of their

power. Where there is reasonable relation to an object within the governmental authority, the exercise of legislative or municipal discretion is not subject to judicial review. Chicago &c. R. Co. v. McGuire, 219 U.S. 549 (31 SC 259, 55 LE 328)." _Clein v. City of Atlanta, 164 Ga. 529, 540 (139 SE 46, 53 ALR 933).

Equal protection is not denied the people outside Monroe because the grand jury appoints their members of the board, whereas the mayor and council alone name the members from Monroe. In the first place, there is a reasonable basis for this. Monroe has a governmental body, the mayor and council, to represent the people in the selection of their board members, whereas the county districts, areas 1 through 4, are not organized units of government with governmental representatives to act for them. Thus, the legislature was confronted with the necessity of finding a substitute or different method of naming their board members. They adopted the method provided under the general law—the grand jury. The grand jury system is not perfect, as evidenced by the fact that if used for selection of all members of the Walton County School District, some of the grand jury could have come from Social Circle which is outside the Walton District. It is probable that no perfect method could be devised to select board members. But fortunately perfection is not required nor is absolute equality or equal treatment. There may be some inequality, as stated in *Georgia Sou. & Fla. R. Co. v. Adkins,* 156 Ga. 826 (120 SE 610), quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61 (31 SC 337, 55 LE 369, AC 1912C, 160): "2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

*Code Ann.* § 59-106 (Ga. L. 1878-79, pp. 27, 34 as amended) provides that the board of jury commissioners shall select "the most experienced, intelligent, and upright men to serve as grand

jurors." It is presumed that public officials will perform their duties. Thus it would not be assumed that the grand jurors living in Monroe would select members of the board for four county areas, who would not be fair and reasonable to those areas but would favor Monroe. Even if such evil action could be ascribed to them the county areas are substantially protected by reason of the fact that the members must be residents of their respective areas. Furthermore, the mere possibility that they may under the statute act arbitrarily or unreasonably is not a ground for declaring the whole Act unconstitutional. See *Franklin v. Harper*, 205 Ga. 779, 795 (55 SE2d 221) and Monongahela Bridge Co. v. United States, 216 U.S. 177 (30 SC 356, 54 LE 435).

The amendment provides a fair, reasonable, equitable, and rational method of selecting members of the board of education. It is not arbitrary or capricious. It does not violate the equal protection clause of the Fourteenth Amendment.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*

DUCKWORTH, Chief Justice, dissenting. I think each of the three attacks upon the alleged constitutional amendment was valid. (1) In leaving to possible future action of the local authorities to determine if a ratified amendment would become valid, this amendment was itself thereby rendered invalid. (2) In allowing Monroe to select some members of the board, then allowing the grand jury, which speaks for Monroe as well as the other portions of the county, to name some members of the board, Monroe is given the greater voice in constituting the board; hence, uniformity and equality is denied, and discrimination practiced. (3) Since Social Circle is compelled by the amendment to conform thereto if it chooses in the future to become a part of the county system, it is thus directly affected, and under the Constitution it must have ratified the amendment as required. For all these reasons I think the majority opinion is incorrect, and I therefore dissent.