30221. SWEET *v.* AWTRY *et al.*

DECIDED DECEMBER 3, 1943. REHEARING DENIED DECEMBER 14, 1943.

*B. F. Sweet, G. Seals Aiken,* for plaintiff.

*Neely, Marshall & Greene, B. Hugh Burgess,* for defendants.

SUTTON, J. The plaintiff sued the defendants for damages for personal injuries sustained in an automobile accident, and alleged substantially as follows: That he was riding as an invited guest in an automobile operated by his son; he had no interest in or control over the operation of the automobile, or in the mission for which it was being used; he was sitting on the right side of the driver in the front seat of the automobile, which was being driven in a northerly direction along Butler street in the City of Atlanta at a rate of speed of about 20 miles per hour as it approached the intersection of Cain and Butler streets; Cain street is a one-way street for traffic going west; the driver of the car in which plaintiff was riding, before entering the intersection, looked to his right to ascertain if any traffic was approaching along Cain street, and seeing there was no traffic approaching, or in the intersection, proceeded into the intersection; as the automobile occupied by plaintiff reached a point more than half way across the intersection, the driver saw an automobile approaching from his right at a very high and illegal rate of speed of about 55 miles per hour, or more, and

although the driver of the automobile in which plaintiff was riding accelerated the automobile in an attempt to prevent the approaching automobile from striking him, and although there was ample room, and no traffic to prevent the approaching automobile from passing to the rear of the automobile in which plaintiff was riding, the approaching automobile did not change its course, but ran into the automobile in which plaintiff was riding and severely injured him; the automobile which ran into the automobile in which the plaintiff was riding was an ambulance weighing several thousand pounds, owned by Awtry & Lowndes Company and operated by George Awtry; by reason of his injuries plaintiff incurred certain hospital, medical, and doctor's bills which would continue to increase on account of his injuries; he had suffered and would continue so long as he lived to suffer pain from said injuries, which were permanent; prior to his injuries he was employed by Premier Laboratories and earned an average of $100 a month, and his ability to work and earning capacity had been substantially and permanently destroyed; he was 63 years of age at the time he was injured, with a life expectancy of about 20 years; he suffered from tuberculosis, and his tuberculosis had been aggravated by his injuries and his life expectancy reduced about 75%, or more; his injuries and damage were the proximate result of the negligence of the defendants in operating the ambulance at a rapid, reckless, and illegal rate of speed of 55 miles per hour, or more, in violation of certain ordinances of the City of Atlanta which were set out in the petition, and in failing to blow the horn of the ambulance, or ring a gong, or give any warning of the approach of the ambulance upon and against the automobile in which plaintiff was riding; defendants were negligent in that the driver of the ambulance failed to apply his brakes, or reduce its speed as it approached and entered the intersection, and in operating it at a high and illegal rate of speed of 55 miles an hour, and in failing to stop the ambulance before entering the intersection when the automobile in which plaintiff was riding had previously entered the intersection; the driver of the ambulance was not looking where he was going, or paying any attention to what he was doing, as he approached the intersection of Cain and Butler streets; that he had been injured and damaged in the sum of $15,000, and judgment was sought in that amount against both defendants.

The defendants denied liability, and alleged that on the date of the accident there was a stop-sign on Butler street immediately south of the intersection with Cain street which required the operator of an automobile traveling in a northerly direction along Butler street to stop before entering the intersection, and set out a copy of the ordinance of the City of Atlanta with respect to said stop-sign, and alleged that the driver of the automobile in which plaintiff was riding failed to stop before entering the intersection, and proceeded into and across the intersection at a rapid and unlawful rate of speed of 35 miles per hour, and that his violation of the city ordinance was the direct and proximate cause of the plaintiff's injuries; that the driver of the automobile in which plaintiff was riding violated another ordinance of the City of Atlanta, the material part of which was: "It shall be unlawful for the operator of any vehicle . . to disobey the instruction of any official traffic sign or signal placed in accordance with the provisions of this ordinance, unless otherwise directed by a police officer," and that the violation of this ordinance by the driver of the automobile in which plaintiff was riding was the direct and proximate cause of his injuries; that if the plaintiff was injured, his injuries were caused by his own negligence and the gross negligence of the driver of the automobile in which he was riding; that plaintiff's negligence was equal to or greater than the negligence charged to defendants, and by the exercise of ordinary care, plaintiff could have avoided any injuries he may have sustained.

On the trial the evidence was conflicting. The driver of the automobile in which the plaintiff was riding at the time he was injured, testified that the injuries to the plaintiff were sustained substantially as alleged in the petition; that the plaintiff was his father and prior to the accident worked with him and was paid the equivalent of $100 a month in board, spending money, and other considerations; that the automobile which he was driving at the time of the accident was owned by his wife, Mrs. Henry Sweet, and used in his business; that when he was not using the automobile his wife used it; that it was kept for the benefit of everybody; that if the plaintiff wanted to go someplace, and either he or his wife was at home, one of them would take him; that on the day of the accident, he had started home, and asked the plaintiff if he wanted to ride with him, and the plaintiff accepted the invitation; that he

first went to see a customer, and was on his way home when the accident occurred. After the accident, this witness made a report to the insurance company which carried insurance on his wife's automobile. He identified the report which he had signed, and which was introduced in evidence by the defendants for the purpose of impeaching his testimony.

The plaintiff testified that he worked with his son at the Premier Laboratories, and that on the day in question, he had started home when his son asked him to ride, and he accepted the invitation; that he did not know how the accident occurred, but that he was injured; and he described his injuries.

There was also medical testimony by both sides as to the extent of the plaintiff's injuries.

The driver of the ambulance, who was also a defendant, testified that he was driving in a legal and proper manner, and that as he approached the intersection the automobile in which the plaintiff was riding came around another automobile which had stopped at the intersection, and drove in front of the ambulance at a rate of speed of about 25 to 30 miles an hour. There was also other testimony as to how the accident occurred.

The jury returned a verdict in favor of the defendants. The plaintiff filed a motion for a new trial, which was overruled, and the exception is to that judgment.

■ The evidence did not demand a finding in favor of the plaintiff, and the court did not err in overruling the general grounds of the motion for a new trial.

■ The automobile in which the plaintiff was riding at the time he was injured was owned by Mrs. Henry Sweet and was being operated by her husband, Henry Sweet, who testified in behalf of the plaintiff on the trial. Mrs. Henry Sweet carried a policy of insurance with the Maryland Casualty Company. On cross-examination, counsel for the defendants asked Henry Sweet if he made a statement to the Maryland Casualty Company, which carried the insurance on his wife's car, the day following the accident. The question was objected to by counsel for the plaintiff, who moved the court to instruct the jury that testimony about the wife having insurance on the automobile was improper and inadmissible; that the question should not have been asked and that they should divest their minds of it. Counsel for the defendants stated that the

question was asked to identify a certain written statement made by the witness to the Maryland Casualty Company on the day following the accident, and that the statement contradicted his testimony given on direct examination on material issues, and would be offered in evidence for the sole purpose of impeachment. The court overruled the objection and allowed the witness to answer the question, and to identify the written statement signed by him. When portions of the written statement were offered in evidence, counsel for the plaintiff objected to their allowance in evidence upon the ground that the statement was made by the witness in behalf of his wife, and was a privileged communication. The court overruled the objection and allowed the testimony and statement in evidence, and this is assigned as error by the plaintiff in ground 4 of the motion for a new trial. "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him (unless they are written statements made under oath in connection with some judicial proceedings), the time, place, person, and circumstances attending the former statement shall be called to his mind with as much certainty as possible; and if in writing, the same shall be shown to him, or read in his hearing, if in existence; and to lay this foundation, he may be recalled at any time." Code, § 38-1803. If the witness had made a contradictory statement, it was proper for counsel for defendants to call to his attention the name of the person or company to whom made, and the circumstances attending the statement; and if the company to whom it was made carried a policy of insurance on the automobile which the plaintiff was driving at the time of the accident, and the statement was made in connection with such policy, it was not improper for counsel to refer to such fact as one of the circumstances attending the former statement. Whether there was a conflict between the former statement and the testimony of the witness given on the trial was for the jury to determine. *Georgia Power Co.* v. *Gillespie,* 48 *Ga. App.* 688 (173 S. E. 755). The cases cited by the plaintiff, *Decatur Chevrolet Co.* v. *White,* 51 *Ga. App.* 362 (180 S. E. 377), and *Minnick* v. *Jackson,* 64 *Ga. App.* 554 (13 S. E. 2d, 891), are distinguishable on their facts from the present case. In each of those cases, the insurance policy was for the benefit of the defendant, while in the present case, the

owner of the automobile to which the policy referred was not a party to the action, nor interested in its outcome. The fact that the husband was driving his wife's automobile at the time of the accident, and that he made a report of the accident to the insurance company which carried the insurance on the automobile, would not make the statement privileged. The testimony was not inadmissible for any reason assigned, and the court did not err in allowing the same in evidence as contended in ground 4 of the motion for a new trial.

■ The court erred, as contended in ground 5 of the motion, in instructing the jury that if they found from the evidence that the defendants were not negligent and exercised ordinary care, or if they found that the plaintiff could have by the exercise of ordinary care on his part, avoided the consequences of the defendants' negligence, if that appeared, after it was in existence and manifest to him, that the plaintiff could not recover, and that it was a question for the jury to determine from the evidence whether or not the plaintiff was in the exercise of ordinary care, or failed to exercise ordinary care. The plaintiff's contention that the above charge was error is meritorious because there was no evidence that the plaintiff was negligent.

■ In special ground 6, the plaintiff contended that the court erred in charging the jury: "Now the defendants deny this and contend that they [the plaintiff and Henry Sweet] did have a joint interest in this car, that it was used as a family car, that they went to and from work in it, that it was on hand to carry the plaintiff wherever he desired to go, and that it did constitute a joint enterprise between him and his son at the time of the alleged occurrence. If you believe that the plaintiff in this case did have some control over this car, that his son was his agent or servant, that he did have authority to demand that his son drive the car in some manner suitable to himself, then I charge you that if you find the driver of the car was guilty of any negligence, this negligence would be imputable to the plaintiff in this case;" upon the grounds that the charge was not supported by evidence, and that there was no evidence that the plaintiff and the driver of the car were engaged in a joint enterprise, or that the plaintiff had any control over the automobile, or authority to demand that the son drive the car in a manner suitable to himself.

· The evidence with respect to the ownership and control of the automobile was as follows: The plaintiff testified: "I was a passenger in an automobile driven by my son, Henry Sweet, on August 6, 1941. As to how I came to be a passenger in the automobile driven by my son, after I got through with my work in the place of business. . . I got ready to go and catch the car and go home. My son told me: 'I am ready to go home and you go with me,' and I was glad to do it, you know; and when we come to the place—I accepted his invitation to go with him gladly;" and Henry Sweet testified: "I say me and my wife and my father all live together in this house out on the north side. . . When I invited my father to go with me in the automobile, I think it was close to 6 o'clock . . in the afternoon. . . As to whether I carried him to town with me in this automobile from day to day, I state, whenever we went to the business together, I carried him. When I went out of town, he went on the street-car. When I had to call on customers on the north side, he would go to the street-car on the south side. I used this car in my business. My father worked there for the business. . . On that occasion, I invited him to go home because I was going home, and it was closing time, and I asked him to go with me. You ask me if he rode home with me every night I was in town and going home, and I state, every night we went home together, he rode with me. If I had an engagement in the city, I remained in the city, and he went home on the street-car. The car was owned by my wife. As to whether it was kept as a family car for my use and benefit, and for her use and benefit, it was kept for the benefit of everybody. As to whether on this occasion I was using it as a family car with her permission, I state, on this occasion I was taking him home, invited him to go home with me. You say you are speaking of my wife, whether she knew I had the car on this occasion, I answer, I don't know that she knew it or not. As to whether I used it when I wanted to, that it was kept for that purpose, I state, it was kept for whatever purpose the car was needed. I used it when I wanted to, and if I was not using it, she used it. If my father wanted to go someplace and one of us was there, one of us would take him." The defendants contend that under the principles enunciated in the cases of *Goldstein* v. *Johnson,* 64 *Ga. App.* 31 (12 S. E. 2d, 92); *Golden* v. *Medford,* 189 *Ga.* 614 (7 S. E. 2d, 236); *Levy* v. *Rubin,* 181 *Ga.* 187

(182 S. E.. 176) ; and *Hubert* v. *Harpe,* 181 *Ga.* 168 (182 S. E. 167) ; the above charge was authorized. We do not think so. In each of those cases, the automobile was owned by the defendant, and **it was sought to** make the defendant liable for injuries sustained by the plaintiff from the operation of the automobile by a member of the defendant's family, or under the control of such member, under the "family-purpose doctrine," first enunciated by our courts **in the case of** *Griffin* v. *Russell,* 144 *Ga.* 275 (87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994). The plaintiff in the present case was not the owner of the automobile; he had no joint interest in it; nor is there any evidence which would authorize an inference that he had the right to control, direct, or govern the operation of the automobile at the time in question.

It is also contended by the defendants that the charge was authorized under the theory that the evidence was sufficient to authorize the jury to find that at the time of the accident, the plaintiff and the driver were engaged in a joint enterprise, and that the **negligence of the driver was** imputable to the plaintiff. The undisputed evidence was that the automobile was owned by Mrs. Henry Sweet, and that the plaintiff owned no interest therein. There was no evidence that the plaintiff had any right to control, direct, or govern the operation of the automobile at the time in question. The evidence was to the effect that if the owner, who was the daughter-in-law of the plaintiff, or her husband, who was the son of the plaintiff, were present, and the plaintiff wanted to go somewhere, one of them would take him. This fact does not indicate that he had the right to direct or control the operation of the automobile on the occasion in question, when he was riding home in the car at the invitation of his son. The evidence in this case is not sufficient to bring it within the rule of a "joint enterprise" as defined by our courts. In *Fuller* v. *Mills,* 36 *Ga. App.* 357 (136 S. E. 807), this court held: "A joint enterprise by two persons riding in an automobile along a public highway, the engagement in which will impute the negligence in operating the automobile of one of the persons, who is the driver, to the other person, must be a joint enterprise in controlling, directing, and governing the operation and running of the automobile, and not merely a joint interest in the objects and purposes of the trip." In this connection, also see *Mayor &c. of Savannah* v. *Waters, 27 Ga. App.* 813

(109 S. E. 918) ; *Jones Mercantile Co.* v. *Copeland,* 54 *Ga. App.* 647 (3) (188 S. E. 586) ; *Laseter* v. *Clark,* 54 *Ga. App.* 669 (4) (189 S. E. 265) ; *Atlanta & W. P. R. Co.* v. *McCord,* 54 *Ga. App.* 811 (189 S. E. 403). "There being evidence to the effect that the automobile in which the plaintiff's son was traveling did not belong to him, and was at the time being driven by another person, over whom, in the operation of the automobile, the plaintiff's son had no control, the negligence of the driver was not imputable to him." *Southern Railway Co.* v. *Autry,* 36 *Ga. App.* 552 (5) (137 S. E. 414). See also *Sheppard* v. *Georgia Railroad & Banking Co.,* 68 *Ga. App.* 697 (23 S. E. 2d, 441) ; *Hare* v. *Southern Railway Co.,* 61 *Ga. App.* 159 (6 S. E. 2d, 65). Under the evidence and the law applicable thereto, the court erred in charging the jury as complained of in ground 6 of the motion for a new trial.

■ The court did not err, as contended in ground 7 of the motion, in instructing the jury as to the law (Code, § 68-303 (g)), which provides that the operator of a vehicle shall have the right of way over the operator of another vehicle approaching from the left of an intersecting highway, upon the ground that it was in conflict with the provisions of an ordinance of the City of Atlanta which provided that "the operator of a vehicle approaching any intersection shall yield the right of way to a vehicle just entered the intersection. When two vehicles enter an intersection at the same time, the driver of the vehicle on the right shall have the right of way". It was held in *Hall* v. *Ponder,* 50 *Ga. App.* 627 (179 S. E. 243) : "The motor-vehicle act of 1927 (Ga. L. 1927, p. 226, 237, § 12(g)) [Code, § 68-303 (g)] . . applies within the limits of municipalities ;" and "where the municipal regulation or ordinance is not by its terms in conflict with the act, but where the regulation or ordinance can be given a construction consistent with the act and can be put into application consistently with the application of the provisions of the act, the act, notwithstanding the existence of the regulation or the ordinance, is applicable within the limits of the municipality ;" and in *Hennemier* v. *Morris,* 51 *Ga. App.* 760 (2) (181 S. E. 602), that "the law with regard to the right of way and speed of motor-vehicles upon the highways of this State, and the municipal right-of-way and speed ordinances on the streets involved in this case, are not in conflict, and there was no error in charging the jury as to both." In the present case, the municipal ordinance

and the provisions of the Code do not conflict, and there was no error in giving both in charge to the jury.

■ The court did not err, as contended in ground 8 of the motion for a new trial, in instructing the jury, after giving the Code, § 68-303 (j), in charge, that it was a question of fact for the jury to determine from the evidence whether it was necessary for anyone to blow his horn at the time of the accident.

■ The plaintiff contended in ground 9 of the motion that the court erred in instructing the jury that they should ascertain from the evidence whether either the plaintiff or the defendants had violated the provisions of the Code, §§ 68-303 (g), or 68-303 (i), or 68-303 (j), and if so, whether the violation of any one or all of these laws was the proximate cause of the plaintiff's injuries; and that if they believed the plaintiff was not entitled to recover, they should find for the defendants; but if they believed that the plaintiff was negligent, and that his negligence was equal to the defendants' negligence, they should find for the defendants; but if they found that both the plaintiff and the defendants were negligent, but that the negligence of the defendants was greater than that of the plaintiff, they should reduce the recovery in proportion to the degree of negligence chargeable to the plaintiff. Under the facts of the present case, the plaintiff was riding as a guest in an automobile driven by his son, and any negligence of the driver in violating the above mentioned Code sections would not necessarily be imputed to the plaintiff. *Hare* v. *Southern Railway Co.,* supra; *Southern Railway Co.* v. *Autry,* supra. Consequently, the court erred in giving the charge complained of in this ground of the motion.

■ The court erred, as contended in ground 10 of the motion, in instructing the jury as to the apportionment of damages if they found from the evidence that the plaintiff had been guilty of contributory negligence. The contention that the charge was without evidence to support it was well taken. There was no evidence that the plaintiff was negligent, and the court erred in charging as contended in this ground of the motion.

■ It was not error, as contended in ground 11 of the motion, for the court to give in charge to the jury the ordinance of the City of Atlanta with respect to placing "stop-signs" on Butler Street at Cain Street, and declaring it to be unlawful for the operator of

any vehicle, or any pedestrian, to disobey the instructions of any official sign or signal placed in accordance with the provisions of the city ordinances, unless otherwise directed by a police officer, upon the grounds that the ordinances were too indefinite to be capable of enforcement and attempted to delegate legislative, executive, and judicial power to the city policemen in violation of certain specified provisions of the Constitution of Georgia. "By common usage, term 'stop-sign' has acquired meaning of legally erected and maintained traffic signal." Meadows *v.* Lewis, 235 App. Div. 243 (257 N. Y. Supp. 137).

■ The court did not err, as contended in ground 12 of the motion, in allowing in evidence the following ordinance of the City of Atlanta: "Section 8. That the stop-signs on Cain Street at Butler Street be removed, and that stop-signs be placed on Butler Street at Cain, making Cain Street the Boulevard," over the objections of the plaintiff that the ordinance was too indefinite, in that it did not lay down any rules, regulations, or restrictions. The ordinance was pleaded by the defendants in their answers, and no demurrer was filed thereto by the plaintiff. A stop-sign is a traffic sign or signal requiring all traffic to stop before entering into or crossing an intersection.

■ Special ground 13 of the motion complains that the court allowed in evidence the city ordinance therein specified over the plaintiff's objections that this particular ordinance was not pleaded or referred to by the defendants in their answers. This exception is well taken. "That a municipal ordinance can not be judicially noticed by State courts is well settled in this State, as well as by the decisions of other States. They are treated as private statutes and must be alleged and proved as matters of fact." *Taylor* v. *Sandersville,* 118 *Ga.* 63, 64 (44 S. E. 845). In this connection, see *Funk* v. *Browne,* 145 *Ga.* 828 (2) (90 S. E. 64).

■ The court did not err, as contended in ground 14 of the motion for new trial, in allowing in evidence the following ordinance of the City of Atlanta: "It shall be unlawful for the operator of any vehicle, motorman of any street-car, or any pedestrian to disobey the instructions of any official traffic sign or signal placed in accordance with the provisions of this chapter, unless otherwise directed by a police officer," upon the ground that it was too indefinite in that it did not lay down any rules, regulations, or restrictions

in the matter. When the above ordinance is construed with the other provisions of the municipal ordinances that require the placing of "stop-signs" at designated points, it is not subject to the objections made by the plaintiff.

■ The court erred in overruling the motion for a new trial for the reasons stated in divisions 3, 4, 7, 8, and 11 of this opinion.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*

SUTTON, J., dissenting from rulings in divisions 3 and 8 of the opinion.

I prepared the opinion of the court and concur in the reversal of the judgment for the reasons stated in divisions 4, 7, and 11 of the opinion; but dissent from the rulings made in divisions 3 and 8. Under the pleadings and the facts, I do not think the court erred in giving the charge dealt with in division 3 of the opinion. In their answers, the defendants alleged that the plaintiff's failure to exercise ordinary care was the proximate and direct cause of any injuries sustained by him; and there was evidence to the effect that the driver of the automobile in which the plaintiff was riding approached a street intersection where the view of the intersecting street was blocked or obstructed by buildings and another automobile parked in the street, and that the driver of the automobile in which the plaintiff was riding violated certain specified city ordinances in not stopping the automobile before entering the intersection; that traffic signs required the driver of the automobile to bring the automobile to a stop before entering the intersection, and that another car was standing in the street; all of which should have been plainly visible to the plaintiff from where he was sitting in the automobile. Under these circumstances, whether the plaintiff exercised ordinary care for his safety in not warning or protesting to the driver of the automobile in which he was riding as to the danger in so approaching the intersection, was for the jury to determine under all the evidence. *Eddleman* v. *Askew, 50 Ga. App.* 540 (2, 3) (179 S. E. 247). "A guest in an automobile can not at all times treat himself as 'dead freight,' but, when negligence on the part of the driver arises, must act as an ordinarily prudent person would act, under the same or similar circumstances, to discover it and avoid its consequences." *Crandall* v. *Sammons, 62 Ga. App.* 1, 4 (7 S. E. 2d, 575). See also *Russell* v. *Bayne, 45 Ga. App.* 55 (163 S. E. 290). Under the pleadings and the evi-

dence, the charge was not error for any reason assigned. Nor did the court err in giving the charge as to apportionment of damages, dealt with in division 8 of the opinion. The contention that the charge was without evidence to support it is without merit. It was said in *Russell* v. *Bayne*, supra: "While the negligence of the host is not imputable to the guest, the guest can not close his eyes to known or obvious dangers arising either from the acts of the driver or from the acts of others, and if there is danger from either cause, and the circumstances are such that it would become apparent to a person of ordinary prudence in like circumstances, then it is the duty of the guest to do whatever in the opinion of a jury a person of ordinary prudence would or should do in the same or like circumstances." See *Eddleman* v. *Askew*, and *Crandall* v. *Sammons*, supra. Under the facts of this case, whether the plaintiff was guilty of negligence, and if so, to what extent, were matters for the jury to determine under all the facts and circumstances of the case; and if the jury found that the plaintiff was negligent and that this negligence contributed to his injuries, the jury had the right under the law to reduce any recovery by the plaintiff in proportion to the negligence of the plaintiff and the negligence of the defendants. Code, § 105-603.