### 33079.   TYSON *v.* SHOEMAKER.

DECIDED NOVEMBER 22, 1950.   REHEARING DENIED DECEMBER 15, 1950.

*Bell & Baker, Neely, Marshall & Greene,* for plaintiff in error.
*Cain & Smith,* contra.

MacIntyre, P. J. (After stating the foregoing facts.) The collision here involved occurred on the outskirts of Cairo, Georgia. The plaintiff was proceeding in an automobile in a northerly direction on North Broad Street, approaching an intersection with highway No. 38, Bainbridge to Thomasville. The defendant's servant was driving a truck on this highway, and it was his intention, as he testified, to cross the intersection and continue eastwardly along the highway with his load of logs. It is apparently conceded by the defendant, plaintiff in error before this court, that the plaintiff Shoemaker, the driver of the automobile, had the right of way at the intersection, apart from any consideration of the stop sign which had been erected on the right hand side of North Broad Street near the intersection, but it is contended that the stop sign placed upon him the duty

to come to a complete stop, and that his failure to do so and his proceeding into the intersection ahead of the truck created an emergency, that, in an effort to avoid striking the automobile, the driver of the truck, in the exercise of ordinary care, was forced to turn the truck suddenly to the right into North Broad Street, and that as a result the logs on the truck, sufficiently chained for ordinary and normal conditions, were thrown therefrom and damaged the automobile and injured the occupant. The plaintiff contends that the stop sign, not having been pleaded and proved as one legally authorized and erected, has no efficiency whatsoever in law, and that to give any recognition to it would be to nullify his right of way at the intersection. He further contends that after he had slowed down to almost a stop, and was in the exercise of his right of way, the collision occurred as the result of the truck driver's failure to yield the right of way, this negligence being the proximate cause of his damage and injury. It is apparently conceded by the defendant that at the time the driver was the employee of the defendant and was acting in the scope of his employment.

The Code, § 68-303 (g), provides: "An operator of a vehicle shall have the right of way over the operator of another vehicle who is approaching from the left in an intersecting highway, but shall give the right of way to an operator of a vehicle approaching from the right on an intersecting highway." A violation of any of the subsections of the Code, § 68-303, is negligence per se. *Ivey* v. *Hall*, 77 *Ga. App.* 350, 353 (48 S. E. 2d, 788), and citations. "The rule of the Code, § 68-303 (g), and like municipal ordinances, giving the right of way to automobiles approaching intersecting highways from the right, applies not only where the automobiles arrive at the intersection simultaneously or at practically the same time, but also where under all the circumstances, including the distances and speeds of the two cars, the driver of the automobile on the left should reasonably apprehend that a collision will occur unless he yields the right of way. Except in plain and clear cases, it is for the jury to determine whether such a situation existed, and whether the driver on the left violated the rule." *Laseter* v. *Clark*, 54 *Ga. App.* 669 (2) (189 S. E. 265). See also *Smeltzer* v. *Atlanta Coach Co.*, 44 *Ga. App.* 53 (1) (160 S. E. 665); *Essig* v. *Cheves*, 75 *Ga. App.*

870 (5) (44 S. E. 2d, 712). The provisions of the Code, § 68-303 (g), apply within a municipality. *Petty* v. *Moore,* 43 *Ga. App.* 629 (1) (159 S. E. 728); *Hall* v. *Ponder,* 50 *Ga. App.* 627 (2) (179 S. E. 243). In the last cited case it was ruled: "Although by the express terms of the act [act of 1927, Ga. L. 1927, p. 226, 240, § 19; Code, § 68-312], as contained in section 19, the act shall not 'be contrued as changing or interfering with any regulation or ordinance which has heretofore or may hereafter be adopted by any municipality of this State, regulating the running or operation of motor-vehicles described in this act,' its provisions are applicable where they are not in conflict with any municipal regulation or ordinance. Where the municipal regulation or ordinance is not by its terms in conflict with the act, but where the regulation or ordinance can be given a construction consistent with the act and can be put into application consistently with the application of the provisions of the act, the act, notwithstanding the existence of the regulation or the ordinance, is applicable within the limits of the municipality. A provision of a municipal ordinance that a particular highway within the limits of the city is constituted a 'boulevard,' and that vehicles approaching from an intersecting street in which a stop sign has been erected where the street intersects with the 'boulevard' must come to a full stop before entering the 'boulevard,' and there is nothing in the ordinance respecting a right of way to any of the vehicles, is not inconsistent with a provision of the State law which gives to the operator of an automobile coming from an intersecting street the right of way over the operator of an automobile from his left and approaching along the other street. The automobile required by the municipal ordinance to come to a full stop before entering the boulevard may nevertheless, in entering the boulevard, have the right of way over the vehicle approaching along the boulevard from the left." A person using the streets or highways is charged with a knowledge of the law applicable to such use. *Central of Ga. Ry. Co.* v. *Bond,* 111 *Ga.* 13 (36 S. E. 299). Custom or use will not excuse the violation of a law. 38 Am. Jur. 679, § 34; *Hatcher* v. *Comer & Company,* 73 *Ga.* 418. Where an ordinance of a municipality is relied upon it must be pleaded and proved. *Sweet* v. *Awtry,* 70 *Ga. App.* 334, 346 (11) (28 S. E. 2d, 154). The

authority to regulate traffic in the City of Cairo, Georgia, and make provision for the erection of stop signs is vested in the Mayor and Councilmen of that municipality. Act of 1906 (Ga. L. 1906, p. 575, § 4).

Bearing in mind the legal principles above stated, we begin the consideration of the case by observing especially that in the absence of any stop sign the plaintiff was not required to do more than slow down at the intersection (*Petty* v. *Moore*, 43 *Ga. App.* 629, 159 S. E. 728), after which he would be at liberty to exercise his right of way, subject only to the condition that he use ordinary diligence in doing so. The evidence was overwhelming that the plaintiff slowed down almost to a stop before proceeding into the intersection. According to his testimony, he was unaware of any sign, and if he had ever seen it in passing along North Broad Street on many occasions it made no lasting impression upon him, and he, after slowing down, proceeded into the intersection under the impression that the truck was coming into North Broad Street on its proper side, but that when it appeared at close range that the truck might strike him he increased his speed in second gear to about 20 miles an hour to avoid a collision, and that his car did not strike the truck. The driver testified that he saw the automobile at a distance of 300 feet away and that "When I got to within about 100 feet of that intersection he had come on up towards the intersection. He was closer to the intersection than I was when I got up to within 100 feet of it. I realized then, while I was 100 feet away, that if he did not stop, if he came on into the intersection, that I would meet him in that intersection, and I kept on traveling on the idea that he would stop and let me pass. . . When I was 100 feet back up the road and realized that if Mr. Shoemaker did not stop we would both reach the intersection about the same time I could have stopped then. The reason I did not stop was because I expected him to stop and let me pass. . . When there ain't no stop sign a fellow can go on, and the one at the stop sign, why 'that man has to stop." He further testified: "When I first realized he was not going to stop I was pretty close to him and I seen I was going to hit him in the side. I estimate that we were about 20 feet apart when I discovered he was coming right on in. When I saw that and realized it I cut

my truck right short to the right so as to get over into Broad Street [instead of going straight ahead]. I made that maneuver or movement to keep from running in the side of him and to keep from knocking all of them logs in there on him and me both." It is obvious from his testimony that the truck driver was of the opinion that the stop sign, official or not, required the plaintiff to come to a complete stop and not merely to reduce his speed, and that there was no need, on that assumption, for him to slow down when he was 100 feet away and traveling about 20 to 25 miles an hour. Without a stop by the plaintiff, however, he realized, when 100 feet away, that the two vehicles would collide, yet he continued along the highway without slowing down until within about 20 feet of the plaintiff's car, and jammed on his brakes only when about 5 or 6 steps from the car. The contention of the plaintiff in error that the truck reached the intersection ahead of the automobile is not borne out by the record. The truck driver did not so claim. The witness Stanaland testified that the automobile would have blocked the truck if the latter had not turned into North Broad Street. The truck driver's misapprehension as to the significance of the stop sign, which must be treated here as unofficial, can not excuse his unfortunate failure to yield the right of way, as required by the decisions hereinbefore cited.

Counsel for the plaintiff in error further insist that an emergency had been created by the act of the plaintiff. The jury have, however, by their verdict properly found that the plaintiff was in the exercise of ordinary care in proceeding into the intersection, after slowing down his car almost to a stop, as testified to by more than one witness, and hence any "emergency" that was created was necessarily caused by the failure of the truck driver to yield the right of way. In these circumstances he could not avail himself of an emergency created by himself and contend that he could not have avoided the collision because of an emergency. No citation of authority need be given for this well-established legal principle.

But counsel also contend that the stop sign, even if unofficial, was sufficient to bring into operation the rules of the common law and require that the plaintiff, in the exercise of ordinary care, should heed the sign and come to a complete stop. We can

not subscribe to this view. To uphold it would be to set at naught the power as to traffic control and regulation in the City of Cairo which was exclusively vested in its Mayor and Councilmen by the act of 1906, supra. That official body might determine that a stop sign should not, in the interest of traffic efficiency, be erected and maintained at a given point, and yet its judgment and wishes be completely emasculated by anyone, with or without an intelligent knowledge of traffic requirements, who might choose, even capriciously, to erect a stop sign at such point. Such an anomaly would strike at the very heart of the statutory right of the plaintiff here to exercise a right of way at an intersection, after reducing his speed in approaching, and without coming to a complete stop unless so required to do by a valid municipal ordinance. A stop sign which requires one to stop at an intersection within a city ought to mean, and we hold it does mean, one which has been erected in pursuance of a valid municipal ordinance. Since the legislature has conferred a priority upon the driver on the right at an intersection, the burden is, and ought to be, upon one who contests the exercise of his right of way to show that it has been postponed by a municipal ordinance requiring that he first come to a complete stop, and not merely reduce his speed in approaching an intersection. If it be said that this requires the driver on the left to know en route whether or not a stop sign be official, the answer is that he had best forbear a challenge of the other's progress and bide his time if he does not know.

It was set up in the answer of the defendant that the State Department of Public Safety, in conjunction with the State Highway Department, had designated State Highway No. 38 as a through highway, and that pursuant thereto the State highway maintenance department had erected the stop sign in question, but, although these allegations were never stricken, the defendant apparently abandoned such contentions at the trial, and unsuccessfully sought to show that that the sign had been erected under directions of the Chairman of the Street Committee of the City Council.

In the present case there was no showing that the stop sign was official or that the plaintiff knew of its existence. He testified that he did not know it was there, and that if he had ever

seen it, no lasting impression of it was made on his mind, and he contends that in fact he did all that he was required under the law to do, namely, to reduce his speed in approaching the intersection, and that thereafter in due diligence he exercised his right of way. The jury was authorized to find that the failure of the truck driver to yield the right of way under the circumstances shown was the proximate cause of the plaintiff's injury and damage. Such failure constituted negligence per se under the law, and no jury question is presented as to whether or not under the rules of the common law the stop sign, even if unofficial, required the plaintiff to stop at the intersection.

Cases from other jurisdictions are cited by counsel for the plaintiff in error in support of their contentions, but do not require any ruling contrary to that here made. We do, however, refer to two Georgia cases relied upon as to the significance of a stop sign. In *Sweet* v. *Awtry,* 70 *Ga. App.* 334 (supra), the plaintiff relied upon an ordinance of the City of Atlanta requiring the erection of stop signs on Butler Street at Cain Street, declaring it to be unlawful for the operator of any vehicle or any pedestrian to disobey the instructions of any *official* sign or signal placed in accordance with the provisions of the city ordinance unless otherwise directed by a police officer. This court held that the ordinance was not subject to the objection that it was too indefinite to be capable of enforcement and attempted to delegate legislative, executive and judicial power to the city policemen in violation of certain specified provisions of the Constitution of the State of Georgia. Then followed a quotation from Meadows *v.* Lewis, 235 App. Div. 243 (257 N. Y. S. 137), as follows: "By common usage, term 'stop-sign' has acquired meaning of legally erected and maintained traffic signal." This court was dealing with an official sign and passing upon the objection stated, and the quotation was unnecessary and obiter, but in any event it can not be said that this court held, or intimated, that the presence of any sign would cast upon the person disobeying it the burden of showing that it was not official. We are cited by counsel to the New York case, from which the quotation was taken, as authority for their contention that any stop sign on a highway or street raises the presumption that it is official, but that case is not authority for such a ruling. There

a collision occurred at a State highway intersection. The opinion referred to the highway law of the State, capable of judicial recognition, providing that the superintendent of public works might, in his discretion, erect and maintain certain described stop signs, and there was a statute making it unlawful to display any official sign purporting to be official or attempting to regulate traffic. It was held that certain testimony constituted a sufficient prima facie showing of the validity and authority of stop signs and was an adequate basis for presuming that the sign in question was not illegally constructed and maintained. It was not even intimated that a stop sign for which no provision had been made by the proper authority would raise a presumption of validity as counsel for the plaintiff in error urges upon us.

In *Richardson* v. *Coker*, 78 *Ga. App.* 209 (50 S. E. 2d, 781), the plaintiff was driving on Barnett Street, in a southerly direction, in Atlanta, Georgia. This street had been designated a traffic boulevard, and on St. Charles Avenue, which ran east and west and crossed this boulevard, a stop sign had been erected. The driver of the automobile on St. Charles Avenue failed to stop. It was not contended that the sign was unofficial, and the decision is not authority for any ruling that where there is a stop sign it is presumed to have been erected under legal authority.

There was evidence as to whether or not the load of logs was equipped with sufficient chains about the logs. This question, however, is of no consequence, because even if chains adequate under normal conditions were used, the sudden turning of the truck to the right conceivably brought about the dislocation and falling off of the logs, as counsel for the plaintiff in error urge, and if, as we hold, this result was brought about by the driver's negligence in failing to yield the right of way, as the jury was authorized to find, such negligence could be said to have been the proximate cause of the plaintiff's injury and damage.

The defendant testified that the plaintiff admitted to him in the hospital after the collision that he was entirely to blame for the collision, but the jury was authorized to find from other evidence that he was incapable of making rational statements at the time, and the plaintiff testified that he did not remember making such statements or any visit by the defendant.

The defendant in error filed in this court a motion accompanied by a certified copy of an order of court disallowing two amendments of the defendant and reciting that the defendant admitted in open court that there was no official regulation or ordinance authorizing the stop sign here involved. It is contended that these recitals should prevail over those in the bill of exceptions and exceptions pendente lite that the defendant admitted in open court that no ordinance had been "located" authorizing the erection of the sign, and it is prayed that the certified copy of the order be made a part of the record. The plaintiff in error asks that the motion be denied, insisting that the other records should prevail. The certified copy of the order can not be accepted by this court as all records from the trial court must be transmitted directly by the clerk of that court. The motion is denied, but it may be added that the alleged inconsistency is of no importance, since it does not appear from the record that ony ordinance was pleaded and proved.

■ The first special ground of the motion for new trial complains because the court refused to admit in evidence the testimony of J. E. King, as follows: "That about the year 1934 as street superintendent, acting on orders of J. F. Montgomery, Chairman of the Street Committee of Council, I placed and installed a stop sign on the east edge of North Broad Street a few feet south of the intersection of this street with State Road No. 38; that this sign was a metal sign approximately two feet square, having thereon in bold letters the words 'Through Street —Stop;' that to my knowledge this sign was maintained at said location continuously from the time it was placed there up to and including February 3, 1947; and that there was a like sign on the other side of State Road No. 38, near the intersection of State Road No. 38 and the Pelham Highway, which was placed there at the same time and was maintained continuously up to and including February 3, 1947; that a certain metal sign having thereon the words 'Through Street—Stop' as exhibited to me here on the witness stand is the exact metal sign located on the south side of State Road No. 38 as described by me above or is another sign of exactly the same appearance and description which has been taken down at some other location. That the small post near the telephone pole in photograph identified as

defendant's Exhibit No. 1 is the post on which the said 'Through Street—Stop' sign I have identified was placed and was being maintained on February 3, 1947." It was contended that this testimony was material as putting in evidence a physical fact or condition, and on the question of the exercise of ordinary care by the plaintiff and avoidance of the collision; the proximate cause of his injury and damage; whether the negligence, if any, of the truck driver was the proximate cause of the plaintiff's injury and damage; whether he was in the exercise of ordinary care; whether the plaintiff was in the exercise of ordinary care and could have avoided the consequences of any negligence of the truck driver; contributory negligence and comparative negligence.

The second special ground of the motion for new trial complains because the court refused to admit in evidence the following testimony of J. B. VanLandingham: "As Chief of Police of the City of Cairo I became familiar with the fact that for a number of years up to and including February 3, 1947, a metal sign, having thereon the words 'Through Street—Stop' had been maintained on the east edge of North Broad Street a few feet south of the intersection of that street with State Road No. 38. The sign, as exhibited to me here on the witness stand is the exact metal sign located on the south side of State Road No. 38 as described by me above or is another sign of exactly the same appearance and description. That the small post near the telephone pole on photograph identified as defendant's Exhibit No. 1 is the post on which the said 'Through Street—Stop' sign I have identified was placed and was being maintained on February 3, 1947." The same reasons as those given in the 1st special ground as to materiality were stated in this ground.

The third special ground of the motion complains because the court refused to admit in evidence the following testimony of C. H. Strickland: "There was a stop sign at this intersection on the day of the accident, February 3, 1947, and it had been maintained at this intersection for a number of years to my knowledge. That the small post near the telephone pole in photograph identified as defendant's Exhibit No. 1 is the post on which the said 'Through Street—Stop' sign I have identified was placed and was being maintained on February 3, 1947."

The same reasons as those given in the 1st special ground as to materiality were stated in this ground.

The fourth special ground complains because the court refused to admit in evidence a "metal sign" as being the exact sign or facsimile of the sign which on February 3, 1947, stood on the east edge of North Broad Street, the same reasons urged as to materiality in the 1st special ground being given in this ground.

Special ground 5 complains because the court refused to permit the truck driver to testify as follows: "The reason I expected Mr. Shoemaker to stop before entering this intersection was because of the stop sign there at that intersection; that I thought I was on a through street. I knew those stop signs were there at that intersection." The same reasons urged in the 1st special ground as to materiality were stated in this ground.

Special ground 4 is without merit and can not be considered because it merely shows that the defendant offered in evidence a "metal sign" without it being shown what words were inscribed thereon, thus enabling this court to know its relevancy, if any. It is set forth that it was the exact sign or facsimile of the sign which on February 3, 1947, stood on the east side of North Broad Street, a few feet south of the intersection, and it is pointed out that the inscription may be determined by reference to special grounds 1 and 2 of the motion. It is well settled, however, that every ground of a motion for new trial must be complete within itself and other grounds will not be looked to in order to complete it. *Trammell* v. *Shirley,* 38 *Ga. App.* 710, 715 (145 S. E. 486) ; *Sloan* v. *Glaze,* 72 *Ga. App.* 415, 418 (33 S. E. 2d, 846) ; *Crain* v. *Daniel,* 79 *Ga. App.* 647, 651 (54 S. E. 2d, 487). Special grounds 1, 2, 3 and 5 are without merit under the ruling we have made in division 1 of this opinion that the stop sign in question, not having been shown to have been erected and maintained in pursuance of any municipal ordinance, would not require the plaintiff to obey it, and the truck driver on the left would rely at his peril upon it being official. The custom and usage of travelers to obey the sign over a number of years would not relieve the truck driver from yielding the right of way, especially when it was not shown that the plaintiff had, within the knowledge of the truck driver, been in the habit of stopping in obedience to the sign, the plaintiff having reduced

his speed according to some witnesses and having entered the intersection in advance of the truck driver. 38 Am. Jur. 679, § 34; *Hatcher* v. *Comer*, 73 *Ga.* 418; *Miller* v. *Moore*, 83 *Ga.* 684, 685 (10 S. E. 360, 6 L. R. A. 374, 20 Am. St. R. 329); *Happ Brothers Co.* v. *Hunter Manufacturing &c. Co.*, 145 *Ga.* 836 (5) (90 S. E. 61). The proposed testimony of J. E. King that as street superintendent of the City of Cairo he installed in 1934 a described sign, acting on orders of the Chairman of the Street Committee of Council would not show a valid and official act of the Mayor and Councilmen authorizing the erection of a stop sign.

Special ground 6 complains that the court erred in charging the jury as follows: "The plaintiff in this case does not claim any special damages. He sues for general damages, which the jury must determine for themselves after considering all of the facts and circumstances of the case. [a] General damages for injury to his person and [b] damages for pain and suffering, which he said resulted from his injury which he claims to have sustained. It is impossible to produce evidence to the jury as to the amount of money that would be necessary to compensate a man for pain and suffering which he has sustained, whether in mind or body. The law, therefore, says that the amount that the plaintiff would be entitled to recover must be left to the enlightened conscience of an impartial jury, such an amount as would, under the circumstances of the case, be, in the mind and conscience of an enlightened, intelligent and impartial jury, a sum which the plaintiff should recover as compensation and which would be properly chargeable to the defendant." It is contended in substance that this charge was confusing and misleading to the jury and caused them to believe that they could determine by their enlightened consciences, not only what amount should be awarded the plaintiff for pain and suffering, but also for other elements of damages, such as diminished earning capacity, loss of time, physicians' bills and hospital expense, the court failing to give the jury elsewhere in his charge any guide for estimating such other elements of damages. While the plaintiff sought damages for diminished earning capacity, he did not seek damages for loss of earnings. In the latter case it would be necessary to introduce proof as to the earnings before and

after the injury, but loss or impairment of earning capacity is an element of pain and suffering. See *West* v. *Moore,* 44 *Ga. App.* 214 (2) (160 S. E. 811). No proof was submitted on special damages, and the jury could not reasonably be said to have gained the impression that they could have awarded any damages for such. The court specifically told the jury that the plaintiff did not claim special damages. That left, as clearly shown by the charge, only [a] general damages for injury to his person [b] damages for pain and suffering. The court had already instructed the jury that general damages "are such that the law presumes to flow from any wrongful act, which the law denominates a tort, and may be recovered without proof of any amount." See *Byfield* v. *Candler,* 33 *Ga. App.* 275 (6) (125 S. E. 905); *Central Georgia Power Co.* v. *Fincher,* 141 *Ga.* 191 (80 S. E. 645). In the excerpt complained of the court told the jury that they must determine for themselves the general damages after considering all the facts and circumstances, but it was not in connection with, but was apart from, the later reference to pain and suffering, the amount of damages for which must be left to the enlightened consciences of an impartial jury. It is clear that the court did not confuse and mislead the jury as the plaintiff in error contends.

Special ground 7 has been expressly abandoned.

Special ground 8 complains that the court erred in charging the jury as follows: "The defendant files an answer in response to the petition in which generally the allegations of the plaintiff are denied. The defendant claims and contends that the plaintiff was injured and his automobile damaged through negligence of the plaintiff himself, that is, that the plaintiff failed to exercise ordinary care at the time and under the circumstances, and that his negligence was the proximate cause of his injury, and therefore the defendant is not liable to the plaintiff for the damages. It is further alleged in the answer that the plaintiff entered the highway without having given the sign or signal required by the law when one is to stop or to make a turn into the highway. Those in substance are the contentions of the defendant." It is asserted that this charge failed to present the defense that the truck driver was in the exercise of ordinary care and operating the truck at about 15 miles an hour when, with-

out notice or warning as the truck approached within a few feet of the place where North Broad Street intersects highway No. 38, the plaintiff, in substance, created an emergency which required the truck driver to turn sharply and radically to the right, and he would have cleared the automobile and avoided any injury and damage to any person or thing but for the stress and strain brought about by such sudden turn, causing the breaking or snapping of a chain holding the logs firmly in place on the truck, whereupon the logs were dumped by centrifugal force upon and against the plaintiff's automobile with resulting damage to the automobile and injury to the plaintiff. There was no evidence of any emergency created by the plaintiff in the manner in which, as the plaintiff in error contends, he entered the intersection, since, in the absence of an official stop sign, and after slowing down as the statute requires, he had the right of way and was exercising it, as the jury was authorized to find, in due care. The court did not err in failing to charge as to an emergency, and the other portions of the charge, together with the statement to the jury that they would have the pleadings out with them for reference, were sufficient in the absence of a special request for any specific instruction. *Mosteller* v. *Mashburn*, 64 *Ga. App.* 92 (2) (12 S. E. 2d, 142) ; *Thomson* v. *Avery*, 67 *Ga. App.* 671, 676 (4) (21 S. E. 2d, 331) ; *United Motor Freight Terminals* v. *Driver*, 75 *Ga. App.* 571, 574 (6) (44 S. E. 2d, 156).

■ By exceptions pendente lite error is assigned on the disallowance of two amendments. The first of these alleged the existence of the stop sign which the rejected evidence heretofore referred to sought to establish, its presence since 1934, the custom of operators of vehicular traffic, including the plaintiff, to recognize the sign and give preference to vehicular traffic on highway No. 38 before entering the intersection, that the plaintiff had used the same route on many occasions, was acquainted with and duly observed the sign, but that on the occasion of the collision his negligence in disregarding it was the proximate cause of his injuries and damage. The second amendment described the sign in more detail, alleging its existence since 1934 and its erection by the street superintendent of the City of Cairo on orders from the Chairman of the Street Committee of the Mayor

and Council, knowledge thereof by the plaintiff and that the public generally, including the truck driver, would rely upon him giving observance and due regard to the sign, and that his failure so to do on the occasion of the collision was the proximate cause of his injuries and damage. These objections are without merit and are controlled adversely to the plaintiff in error by the rulings hereinbefore made.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*